**TUSKEGEE ALUMNI HOUSING FOUNDATION, INC., Plaintiff,**

v.

**NATIONAL HOMES CONSTRUCTION CORPORATION et al., Defendants.**

No. C–2–74–523.

United States District Court,
S. D. Ohio, E. D.

May 24, 1978.

Arnold S. White, Columbus, Ohio, for plaintiff.

Edgar A. Strause, Vorys, Sater, Seymour & Pease, Columbus, Ohio, for defendants.

## OPINION AND ORDER

KINNEARY, District Judge.

This matter is before the Court on the motion of plaintiff, Tuskegee Alumni Housing Foundation [hereinafter TAHF], for a judgment notwithstanding the verdict. Defendant National Homes Construction Corporation has filed a memorandum in opposition, and plaintiff has replied to that memorandum.

The essential facts underlying this litigation were set forth in this Court's order of March 1, 1977, and may be restated briefly. In 1971 defendant National Homes Construction Corporation [hereinafter National] contracted with plaintiff to construct a number of single family housing units. Although the construction was completed, it was not entirely to plaintiff's satisfaction, and certain off-site improvements had not

been made at all. Plaintiff, in turn, had defaulted in its payments to its mortgagee (not a party to this proceeding). In an attempt to resolve these and other differences, these three entities (plaintiff, National, and plaintiff's mortgagee) entered into an "agreement" on April 17, 1973. In this agreement, the mortgagee agreed to dismiss a separate foreclosure action then pending against TAHF in state court, TAHF agreed to remit to National an amount claimed due under the original contract, less an amount to be held in escrow pending the completion of the off-site repairs by National, and National agreed to complete the disputed repairs in accordance with a list of specifications appended to the agreement. These and other terms of the workout agreement involved the exchange of substantial amounts of money and notes, most of which transpired at the closing on September 21, 1973. Defendant subsequently failed to perform the designated repairs, and plaintiff arranged for their completion by another contractor. Plaintiff subsequently brought this action based both on the original contract and the workout agreement and National raised the affirmative defense of accord and satisfaction. Believing that judicial economy would be served by addressing the merits of the accord and satisfaction defense in advance, this Court ordered a trial on that issue alone. It was accordingly tried to a jury, which on May 19, 1977 returned a verdict finding that the agreement in its final form had been an accord and that defendant's performance had satisfied that accord.

 Plaintiff's motion for a j. n. o. v. raises essentially two legal issues. First, plaintiff attacks the jury's verdict on the ground that the evidence does not support the finding that the workout agreement constituted an accord. Second, plaintiff asserts that even if there had been an accord, under Ohio law there must be full and complete performance before there can be a satisfaction of the accord. TAHF suggests that while there may have been substantial performance (a concession which it does not explicitly make), it fell short of the requisite full performance. In its evaluation of

plaintiff's motion, this Court will be guided by the rule that "[j]udgment notwithstanding the verdict is not proper unless the evidence is such that there can be but one reasonable conclusion as to the proper verdict." *See Scharfenberger v. Wingo,* 542 F.2d 328, 333 (6th Cir. 1976), *citing Reeves v. Power Tools, Inc.,* 474 F.2d 375, 380 (6th Cir. 1973). "Where there is conflicting evidence, or there is insufficient evidence to make a 'one-way' verdict proper," this Court will allow the jury's verdict to stand. 5A *J. Moore, Moore's Federal Practice* ¶ 50.-07[2], at 2356 (1975).

Plaintiff raises three grounds for finding that the workout agreement did not constitute an accord. Two of these are addressed to the formation of the accord and will be considered together. Plaintiff claims that as a matter of both objective and subjective interpretation the workout agreement was not intended to be an accord and therefore cannot be given effect as one. Plaintiff draws objective support from the complete absence of the term "accord" in the agreement even though it was drafted by experienced attorneys. The language which is most suggestive of an accord is found in Recital "E", which specifies: "It appears to the parties as though a resolution of the problems concerning the Project can be had as hereinafter set forth." According to plaintiff, "resolution" does not convey in either import or effect the meaning of "accord." Plaintiff's subjective argument is that defendant offered no evidence from any person with actual or apparent authority concerning defendant's intentions during the conferences which resulted in the workout agreement. Plaintiff's own evidence that it did not intend the agreement to be an accord was therefore uncontradicted.

 As always in questions involving the construction of a contract, this Court will look first to the four corners of the agreement itself. If no ambiguity remains following this evaluation, then it is unnecessary to consider extrinsic evidence of intent. In this regard, the Court does not deem it significant that the term accord does not

appear anywhere in the agreement, even though the agreement was drafted by experienced attorneys. Were the determination of the existence of an accord to turn on the physical presence of the term itself, then there would be scant purpose to the substantial case law which has addressed itself to this very issue. With respect to the drafters' qualifications, an equally strong argument could be made that they knew that the agreement they were drafting risked interpretation as an accord. One might reasonably expect them to insist on clear language expressing any dissatisfaction with this alternative.

■ But even without requiring physical use of the term itself, it must still appear from the agreement—viewed objectively— that both parties intended it to operate as an accord. See 6 A. Corbin, Corbin on Contracts § 1277 at 118 (1962). Plaintiff asserts vigorously that in Ohio this intention must be express, and cites Kinkey v. Maxon, 114 N.E.2d 852 (Hamilton Cty. Ct. App.1952), as authority for this proposition. But the requirement propounded by Kinkey, which parallels that of Corbin, is that there must either by an express intent or expressions or circumstances which clearly indicate that the second agreement is intended as a discharge of duties arising out of the first. This Court adhered to this principle in its instruction titled "Purpose of the Second Agreement."

> The second element requires you to find by a preponderance of the evidence that the second agreement was intended by the parties to resolve the claims or disputes arising out of the first agreement by substituting new performance by both parties for the original performance.

> As with any other contractual provision, this question is controlled in the first instance by the written agreement between the parties. Where, as here, the written agreement contains no clear and unambiguous language which is addressed to the question, it falls to the jury to determine what the parties intended to be the treatment of this question under the agreement.

> In making this determination, you are governed by the parties' objective manifestations of their intent; that is, those indications of intent which would suggest to a reasonable person what the parties sought to accomplish by their second agreement. In this context, you may consider such items as prior negotiations between the parties, reasons which the parties revealed for entering into the second agreement, actions which the parties took in contemplation of the forthcoming agreement, and the benefits and detriments which would accrue to the parties under the contract. You should carefully weigh these and other factors which, in your opinion, indicate whether these parties intended the second agreement to constitute an accord.

> If, after your deliberations, you find by a preponderance of the evidence that the parties did intend the second agreement to resolve the claims arising out of the first, then you may find that there was an accord. If, on the other hand, you do not conclude that this was established by a preponderance of the evidence, then you must find that there was not an accord and satisfaction.

This Court is therefore unpersuaded by plaintiff's argument that the instruction is not in accord with the law in Ohio.

■ Based on the foregoing statement of the law, this Court also concludes that there is at least conflicting evidence and, indeed, substantial evidence to support the jury's finding of an accord. It is clear from the workout agreement itself, which was introduced into evidence as joint exhibit III, that there was a dispute between TAHF and National concerning who bore the responsibility for making off-site improvements, that this dispute directly resulted in the failure of the Project to continue as scheduled and in TAHF's subsequent default on its mortgage obligations, and that the mortgagee had initiated foreclosure proceedings against TAHF. Significantly, there are other clauses which raise a clear inference that the parties intended this new agreement to discharge uncompleted perform-

ance due under the earlier agreement. Thus, there is an agreement as to the unpaid balance owing to National on the construction contract (¶ 9), an agreement as to exactly which repairs were to be performed by National—and therefore, by negative inference, those disputed repairs for which National would no longer be responsible—(¶ 2 and attached repair list), the mortgagee's separate promise to dismiss its pending foreclosure action, and the representation that the Department of Housing and Urban Development would pay an interest subsidy to the mortgagee. In light of these provisions, this Court cannot view the evidence as admitting of but one reasonable conclusion on the issue of whether the workout agreement was intended to operate as an accord.

Since the jury's verdict is supported by the objective manifestations of the parties' intent, the subjective manifestations of that intent are no longer material. Accordingly, this Court has considered neither the testimony of Fred Grimes nor the deposition of Alfred McClure insofar as either is probative of the parties' subjective intent.

■ Plaintiff has suggested an alternative reason for concluding that this agreement could not legally constitute an accord. Plaintiff urges that an agreement is not an accord unless it settles all claims existing between the parties. Even if plaintiff's argument is qualified by limiting it to all outstanding claims arising out of the original agreement, this Court cannot agree. Certainly most accords are intended to discharge all performance due under a preexisting agreement, and certainly the fact that specific claims were not included in an agreement should be weighed in determining whether the parties intended the agreement to be an accord. This Court, however, knows of nothing intrinsic in the concept of an accord which makes the discharge of all prior claims a prerequisite to its validity. As with any other contract, the determinative factor should be the intentions of the parties. It might well occur, for example, that parties strongly dispute specific claims and choose to leave those claims to subse-

quent litigation while working out an agreement resolving the remaining claims. *Butler Produce & Canning Co. v. Edgerton State Bank Co.*, 159 Ohio St. 267, 112 N.E.2d 23 (1953), cited by plaintiff to support its argument, is in accord with this analysis. In *Butler* the plaintiff company had been embezzled by its bookkeeper. It entered into an agreement with him in which it recited its belief that he had embezzled at least $35,000 and he admitted the taking and agreed to repay it. There was no mention of any taking in excess of $35,000. Plaintiff subsequently discovered three additional checks totalling in excess of $5,000 which the bookkeeper had written and sought to hold the defendant bank liable for having honored them. The bank pleaded accord and satisfaction. The appellate court upheld a jury verdict finding that the accord had discharged all defalcations, both known and unknown. But its conclusion did not flow from the premise that an accord must discharge all prior claims as a matter of law, but rather from its finding that the evidence suggested that the parties had objectively intended the accord to have this effect. Such an analysis would have been unnecessary if this effect were inherent in the concept of an accord.

Accordingly, the Court views the import of any failure to include claims in an alleged accord as a question for the jury. Moreover, although plaintiff has urged that the claims made in counts 2, 4 and 5 of its complaint were not addressed in the workout agreement, there is evidence in the record which would support a verdict that all claims from the earlier agreement were in fact included. Count 2 refers to a promise by National that the homes would be completed for $300 per unit less than the sales price and counts 4 and 5 refer to separate promises by National relating to the construction of proper drainage systems and an allegedly induced waiver of the normal HUD inspection requirement. Provision 9 of the agreement specifies: "Tuskegee and National agree that the unpaid balance of the construction contract between them is the sum of $311,578.00". It is not unreasonable for a jury to conclude

from such language that the claims described in count 2 were covered in the workout agreement. As noted earlier, the agreement incorporated by reference a comprehensive list of repairs which National agreed to perform. Item 4 of this list specified "Grade for drainage away from foundations"; item 6 was "Connect and/or replace gutter and/or downspout and replace broken drain tiles"; and item 22 provided that National would make certain repairs necessitated by flooded basements. Again, it is not unreasonable to conclude from this evidence that the claims underlying plaintiff's fifth claim for relief were subsumed in the workout agreement. Finally, ¶ 2 of the agreement by its terms suggests that HUD was directly involved in the preparation of the repair list accompanying the workout agreement. The essence of plaintiff's fourth claim is that National's procuring a waiver of HUD inspection requirements worked out to plaintiff's detriment when the houses subsequently failed to meet HUD specifications. It is not unreasonable for a jury to conclude that HUD's involvement in the preparation of the repair list would obviate any problems based on noncompliance with HUD requirements. Accordingly, this Court concludes that the jury's verdict that the workout agreement constituted an accord is not clearly erroneous and that a judgment notwithstanding the verdict on that ground would be improper. It is therefore incumbent upon the Court to consider the next objection raised by plaintiff's motion—whether Ohio law permits less than full performance to satisfy an accord.

The evidence is uncontroverted that National failed to complete all of the repairs delineated in the list accompanying the workout agreement. Moreover, when called upon to do so, National refused, claiming that vandalism was making repairs impossible and that plaintiff had failed to complete certain preliminary work for which it was responsible. TAHF chose to avail itself of the alternative set forth in the agreement, and it expended the $112,500 in escrow funds to have the work completed by another contractor. Defendant urges that this constituted full and complete satisfaction of the accord, since this option was clearly specified as and intended to provide an alternative performance. Plaintiff, however, contends that the time limits contemplated by the agreement permitted critical—they would make the project self-sustaining—deadlines to be met only if National itself performed the specified repairs. It would therefore strain credulity to assert that the parties intended that National's default could constitute alternative performance.

Before addressing this question, it should be pointed out that there is one construction under which the jury's verdict finds unquestionable support. This Court instructed the jury that the law permits substituted performance to be either executory or contemporaneous with the formation of the accord. There was evidence at trial that the workout agreement was intended to be a substituted contract, that is, that the execution of the accord constituted the requisite satisfaction and extinguished any claims arising out of the earlier agreement. However, despite the Court's instructing the jury in this manner, it did not distinguish between these two types of satisfaction in the verdict forms submitted to the jury. Those forms offered the jury three alternatives:

1. The second agreement did not constitute an accord.
2. The second agreement constituted an accord, but the subsequent performance of National did not satisfy the accord.
3. The second agreement constituted an accord, and the subsequent performance of National satisfied the accord.

The only way for the jury to have communicated a finding that there was a substituted agreement (i. e., that the accord and satisfaction were simultaneous) would have been to use the third form, which was in fact the one used. But this ambiguity makes this Court reluctant to rely on a substituted contract as the sole reason for denying plaintiff's motion. The Court will therefore consider whether Ohio permits

substantial performance to constitute satisfaction of an executory accord and, if so, whether the ultimate performance of the repairs involved here by a third party constituted substantial performance.

The instructions to the jury specified that "the law does not require performance according to the strict letter of the accord before there can be a satisfaction. It is sufficient that there be substantial performance of the obligations under the accord." Plaintiff has taken vigorous exception to this language from the outset. Ohio does not appear to have taken any position on this precise question. *Gheen v. Dalonzo,* 33 N.E.2d 416 (Summit Cty. Ct.App.1939), urged by plaintiff as precedent, is readily distinguishable. The performance tendered in that case was the defendants' surrender of realty to the plaintiffs in the face of an accord calling for conveyance of the subject property. But surrender does not even arguably constitute substantial performance of a promise to convey, so that the precise issue raised here was not before that court. The same logic applies to *Frost v. Johnson,* 8 Ohio 393 (1838), also cited by plaintiff. Again the court did not consider the tendered performance substantial, so that any language as to the necessity of "full and complete performance" of the accord is dictum.

This Court has decided that the better reasoning is that substantial performance of an accord is sufficient to satisfy it. By definition, a court which requires only substantial performance is still not countenancing frustration of the promisee's purpose. Where the breach defeats the purpose for the agreement, then the part performance is not considered substantial. *See* 3A *A. Corbin, Corbin on Contracts* § 706 (1960). What is therefore at issue here is whether a slight breach should absolve the promisee of his own duty to perform, rather than to continue performance and recover damages for the breach. By entering into an accord rather than pursuing a remedy of damages, the promisee(s) has indicated that performance under the accord is particularly important. A requirement of strict performance defeats, rather than supports, performance and therefore frustrates this purpose. Of course, it may be argued that a promisee who enters into an accord has already foregone certain rights under the original contract and should therefore be entitled to strict performance of the accord. But this argument overlooks the fact that in many accords—and certainly in the present one—each party has sacrificed certain rights in the expectation of obtaining performance. This Court prefers to give effect to the compromises of all of the parties and ascertain whether the tendered performance satisfies the underlying purpose of the accord.

What little authority is extant would support the Court's conclusion. *See Collins v. Hupp Motor Car Corp.,* 34 F.2d 787, 789 (E.D.Mich.1929); 6 *A. Corbin, Corbin on Contracts* § 1275 (1962). And while this authority is extremely sparse, this Court believes that Ohio courts would reach the same conclusion. The legal issue having been resolved, it remains to decide whether there was evidence to support the jury's verdict that National's performance was substantial.

Treating this accord as an executory accord (which, it will be recalled, is the assumption underlying this entire portion of the opinion) this Court is unwilling to regard the simple presence of escrowed monies as evidence of substantial performance. As plaintiff points out, this was a complicated agreement. If the jury was unwilling to find that it was within the contemplation of the parties that the accord was satisfied at its formation, then the Court would expect it to demand something more than the simple presence of an escrow account incorporated in the accord to constitute substantial performance.

But in the present circumstances the escrow funds were not only available, they were actually used to complete the work which National had failed to perform. Plaintiff thus obtained the performance it had bargained for in the second agreement. That this might be completed using escrow funds because National itself defaulted was

clearly within the contemplation of the parties to the accord. Plaintiff's decision to avail itself of the accord and obtain the performance it had bargained for rather than claim that the accord is a nullity and that resort should be had to the underlying agreement is easily sufficient to permit the question of substantial performance to go to the jury. The weight to be accorded plaintiff's failure to obtain the desired performance within the specified time period, or to have it completed by National, then becomes a question for the jury. Whether or not this Court agrees with the jury's conclusion is irrelevant at this stage.

WHEREUPON, this Court determines that plaintiff's motion for a judgment notwithstanding the verdict is not meritorious and it is accordingly DENIED.