760 P.2d 775

**NATIONAL OLD LINE INSURANCE COMPANY, Plaintiff–Appellant,**

v.

**Forrest L. BROWN, Pauline Brown, William E. Casto, Deborah Casto, Gordon D. Jones, Margaret Jones, Irene B. Luther, Jerold A. Martin and W.E. Luther General Contractors, Inc., Defendants–Appellees.**

No. 17053.

Supreme Court of New Mexico.

Aug. 25, 1988.

Modrall, Sperling, Roehl, Harris & Sisk, P.A., Paul M. Fish, Mark B. Thompson, III, Albuquerque, for plaintiff-appellant.

Robinson & Wainwright, P.A., Paul W. Robinson, Sherrie L. Tepper, Dale Walker, Robert D. Montgomery & Assoc., P.A., Robert D. Montgomery, Albuquerque, for defendants-appellees.

**OPINION**

RANSOM, Justice.

National Old Line Insurance Company (National) brought this action to collect a promissory note and foreclose on a deed of trust. Following a non-jury trial, the trial court ruled in favor of the defendants on grounds of accord and satisfaction. We affirm.

Defendants, William E. Casto, Deborah Casto, Benjaman M. Lucas (deceased), Harriett Lucas (deceased), Forrest L. Brown, Pauline Brown, Gordon D. Jones, Margaret Jones, William E. Luther (deceased), Irene B. Luther, Jerold A. Martin and Marsha Martin (deceased), signed a note dated April 16, 1963, in the original principal amount of $77,000 due May 1, 1978, with interest at 6% per annum. They also executed a deed of trust as security for payment of the note.[1] The note was made

---

1. The deed of trust that was security for payment of the note contained provisions for releases of parcels within four separate tracts. The release for tract one was provided for upon payment of the sum of $12,597, for tract two upon payment of the sum of $6,969, for tract three upon payment of the sum of $27,528, and for each lot in tract four upon payment of the sum of $1,000.00. Any partial release was further conditioned upon a $5,000 principal payment on or before May 1, 1964. (A supplemental deed of trust substituted new properties for tract two.) As additional security for payment of the note, life insurance had been issued on the lives of the male signatories to the note. Assignments of the policies were recited to have

payable to Century Life Insurance Company (Century), which subsequently went into a receivership resulting in the assignment of the note and deed of trust to National in 1969.

In March 1968, prior to the receivership, Brown and Casto, acting individually and on behalf of Glenwood Corporation, a real estate company owned and controlled by Brown and Casto, met with Century's president William Laidlaw and other Century representatives to discuss the formation of a real estate investment and development business. At the time these negotiations occurred, Brown and Casto along with Glenwood Corporation owed Century on several loans, including the $77,000 promissory note.

Under the basic terms of the agreement regarding the new venture, Brown and Casto were to contribute two pieces of real estate, the Canyon property and the Sherwood property, and were to manage the business. For its part, Century agreed to restructure or consolidate the loans owed by the defendants to Century. Specifically, the $77,000 promissory note was to be absorbed into the new entity, remaining an asset of Century to be paid off by the new entity. Century was also to contribute certain properties. The agreement additionally provided for the transfer of stock in Century's holding company to Glenwood Corporation and affiliated interests. The ownership interest in the new entity for each respective party was divided 20% to the Brown and Casto group and 80% to Century. Although both parties created similar contemporaneous memoranda outlining essential terms, the agreement never was reduced formally to writing.

In early August 1968, in performance of their agreed contribution to the real estate venture, Brown and Casto conveyed the Sherwood property to Century. This conveyance was followed the succeeding month by the conveyance of the Canyon property. Contemporaneous with the conveyance of these properties, the defendants executed a liquidation agreement which acknowledged that they were delinquent in making installment payments on the promissory note and that they were unable, without advancements from Century, to make payments of taxes and assessments against the real property covered by the deed of trust. In November 1968, the defendants executed a supplemental liquidation agreement that reflected the increase in the note's principal attributable to the amounts Century advanced for the payment of taxes and utility assessments. Century went into bankruptcy shortly after these transactions transpired and, as a result, the formation of the new real estate business was never completed.

In February 1972, Glenwood Corporation had written to National seeking releases on certain lots in consideration of the payment of $1,000 per lot on the note. In August 1972, National had written Brown concerning the fact that the principal on the note was not being reduced. Payments by third parties to National ensued in 1973 and continued until 1978. None of the defendants, however, personally made any payments on the note after 1968.

In 1974, Brown and Casto, among others, had brought an action against National in the United States District Court for the District of New Mexico complaining that Century had not performed its part of the 1968 accord. Brown and Casto sought to rescind the transfer of the Canyon and Sherwood properties unless National abided by the accord. The federal action was dismissed with prejudice in 1976 after the parties announced that the case had been settled. In fact, however, that settlement never was consummated because National insisted that the note in question be paid or the deed of trust foreclosed.

been made to the payee, and all of the makers of the note agreed that the cash proceeds accumulated under the terms of the policies, at the option of the payee, might be applied to reduce the principal amount of the note and all accrued interest thereon in the event there were sales of any portions of the tracts of land without written consent of the payee, or upon default in making any payments due under the note or upon the breach of any of the terms or conditions of the note, or the deed of trust.

Unsuccessful in executing a settlement agreement, National brought suit in 1984 against the defendants to enforce the note and foreclose on the deed of trust. Following a non-jury trial, the district court found and concluded that the promissory note had been paid, released, and discharged by an accord and satisfaction.

At issue in this case is whether substantial evidence supports a finding of an accord between Century and the defendants concerning the discharge of the promissory note and, if so, whether the conveyance of the Canyon and Sherwood properties, benefit of which was received by National as assignee of the assets of Century, constituted sufficient performance entitling the defendants to claim satisfaction of the accord.

■ An accord and satisfaction is a method of discharging a contractual obligation by substituting for such contract an agreement for the satisfaction thereof and performing the substituted agreement. *Smith Constr. Co. v. Knights of Columbus, Council*, 86 N.M. 50, 519 P.2d 286 (1974). Here, Century and the defendants entered into an executory accord for the future discharge of existing loan obligations by a substituted performance. *See* 6 A. Corbin, *Corbin on Contracts*, § 1268 (1962). "When the executory contract is fully performed as agreed, there is an accord and satisfaction and the previously existing claim is discharged." *DeVilliers v. Atlas Corp.*, 360 F.2d 292, 295 (10th Cir.1966). As with any contract, an accord requires offer, acceptance, and a consideration to be enforceable. *See Clark Leasing Corp. v. White Sands Forest Prods., Inc.*,

87 N.M. 451, 453, 535 P.2d 1077, 1079 (1975).

National contends that the trial court erroneously concluded that the defendants had established an accord and satisfaction for this specific note. National focuses upon the written real estate agreements memorializing the transfer of the Canyon and Sherwood properties. National points out that neither agreement mentions the $77,000 note. National further maintains that the trial court's only finding regarding the discharge of the note refers to these real estate agreements.[2]

In addition to the real estate agreements, National relies upon the following to support its proposition that an offer in full satisfaction of the promissory note was not made by the defendants nor accepted by Century: (1) the absence of any mention of the note in the initial memorandum concerning the accord drafted by the attorney for Brown and Casto;[3] (2) the acknowledgement of the debt represented by the note in the supplemental liquidation agreement, which was executed following the conveyance of the Sherwood and Canyon properties; (3) the subsequent payments made to National by Glenwood Corporation and others to gain the release of certain lots under the deed of trust securing the note; and (4) National's drafted agreement to settle the 1974 federal suit brought by Brown and Casto to rescind the transfer of the Canyon and Sherwood properties, in which National insisted that the note be paid or the deed of trust foreclosed.

The defendants counter that the two real estate agreements represent steps undertaken in satisfaction of the accord, and do not constitute the accord itself. Rather,

2. The applicable finding (No. 17) reads as follows:

The new agreement (Plaintiff's Trial Exhibit 199) was never executed formally. However, Brown, Casto and Glenwood Corporation carried out their portion of the agreement by deeding to Century Life Insurance Company property known as the "Canyon Property" and property known as "Sherwood Forrest Property." However, Century never completed its part of the transaction before receivership. Each party acknowledges that the court apparently made a mistake in this finding because the testimony showed that there were two pieces of

real property and two agreements, Exhibits 199 and 201. Moreover, each of these agreements was formally executed in writing.

3. Although both parties drafted initial memoranda concerning the accord, only the Brown and Casto memo was admitted into evidence, Century's memo having been lost or destroyed. However, the trial court did not rely upon this memorandum to substantiate the existence of the oral accord. Accordingly, we do not address this point of National's argument in our decision.

the accord concerning the discharge of the note was reached during discussions that took place in March 1968. Defendants maintain further that the liquidation agreements were not intended to affect the terms of the accord that previously had been satisfied with the conveyance of the Canyon and Sherwood properties. The liquidation agreements were only a formality executed at the request of Century in order to document and to support its books for regulatory insurance purposes. With respect to the subsequent payments on the note, the defendants assert that such payments do not indicate the absence of an accord and satisfaction. While they do not dispute that National was able to collect several thousands of dollars from several persons by its refusal to release property subject to the deed of trust, it was a simple fact that Glenwood Corporation was unable, in the face of National's refusal to release the properties, to deliver clear title to purchasers of lots unless it paid the sum demanded by National. Finally, the defendants maintain that the proposed settlement agreement drafted by National, which demanded liquidation of the note or foreclosure of the deed of trust, does not negate the existence of the accord and satisfaction because Brown and Casto never accepted the terms of National's settlement agreement.

We must decide whether the trial court made findings of ultimate facts, based on substantial evidence, that reasonably support its conclusion that there was an accord and satisfaction. *See Cave v. Cave*, 81 N.M. 797, 474 P.2d 480 (1970). "[F]indings are to be liberally construed in support of a judgment, and such findings are sufficient if a fair consideration of all of them taken together justifies the trial court's judgment." *State ex rel. Goodmans Office Furnishings, Inc. v. Page & Wirtz Constr. Co.*, 102 N.M. 22, 24, 690 P.2d 1016, 1018 (1984). Taken as a whole, it is reasonably apparent that the trial court found that the parties reached an oral accord in March 1968. The trial court's finding preceding the one referring to the new agreement (see footnote 2) stated the following:

During 1968, the defendants * * * negotiated with William Laidlaw * * * for the creation of a new entity. This new entity was to pursue a course of real estate development and anticipated the transfer of the Sherwood [property] * * * and the Canyon [property] * * * by Brown and Casto to Century Life Insurance Company * * *. [T]he promissory note in the instant case was to be absorbed into the new entity.

Read in their proper context, the findings demonstrate that the trial court found that the accord was reached in March during the negotiations by Brown and Casto with Century. Moreover, the trial court concluded that the accord was excepted from the statute of frauds because the defendants performed their part of the agreement with the transfer of the Sherwood and Canyon properties. *See Boggs v. Anderson*, 72 N.M. 136, 141, 381 P.2d 419, 422 (1963). This conclusion corroborates that the trial court found that the accord was an oral contract; the only reference to an oral agreement referred to in the findings concerned the March negotiations between Century and Brown and Casto.

Our review of the testimony of Laidlaw, Brown, and Casto demonstrates that there was substantial evidence to support the trial court's finding of an accord in March 1968. It appears that a shell corporation affiliated with Century was the entity to be formed initially as the new real estate development and investment company. Once the new entity was capable of either earning or borrowing sufficient capital to pay off the note to Century, the note was to be discharged.

According to Laidlaw, the agreement anticipated relieving the defendants of their liability under the note. In other words, Brown and Casto were to contribute two pieces of real estate toward the formation of the new entity and the new entity would assume, *inter alia*, the defendants' obligation under the $77,000 promissory note. Laidlaw testified to the following:

Q. Now, in their contract or deal [referring to the March negotiations], what was to happen to those loans?

A. They would be consolidated or re-worked. I believe the Glenwood loan was restructured but the smaller loan [the promissory note] was to be absorbed, consolidated into the subsidiary. That was, that particular one was more of an accommodation to Century than it was to them, because we, needless to say, had, we always had to be prepared for insurance examiners, just like banks prepare for bank examiners, and make sure the files are current and up-to-date, restructured; or, in this case, that particular loan was to be absorbed into the new entity.

Q. It was to be absorbed and assumed by the new entity?

A. Yes. In other words, it doesn't make sense to have them put their best goodies into the company without getting something for it.

Q. And were the makers on those notes to be relieved of their liability?

A. Yes. That's just like the Canyon property. The people were taken out, the minority people were taken out. The innocent bystanders were not a part of the agreement, therefore, they were to be released.

Brown and Casto also testified that they understood the March negotiations to have culminated in an agreement whereby their contribution of the two pieces of real estate would result in the formation of a Century subsidiary, which would assume responsibility for the promissory note.

Notwithstanding the finding of a March accord that is supported by substantial evidence, there still remains the question of the supplemental liquidation agreement, which acknowledged the debt on the promissory note after the property transfers allegedly had satisfied the discharge of that very obligation. The trial court found that the supplemental liquidation agreement was executed at the request of Century for the purpose of clarifying Century's books and records. The trial court found

that the parties understood, notwithstanding the liquidation agreement, that they previously had entered into an accord and satisfaction to the effect that the note and supplemental liquidation agreement would be paid, released, and discharged. Again, the testimony of Laidlaw provides substantial evidence to support this finding.

Laidlaw stated the following:

Q. Can you tell the court why [the liquidation agreement] and [the supplemental liquidation agreement] were entered into?

A. To withstand examination by the Department of Insurance, clean things, or in other words, get taxes paid, back interest capitalized. That's pretty common practice in the insurance industry.

Q. Kind of get things up-to-date?

A. That's right.

Q. And also, when the deal was consummated in March of 1968, was the liability represented in [the liquidation agreement] and [the supplemental liquidation agreement] also to be rolled into the subsidiary and assumed by the subsidiary and makers and co-makers released?

A. Yes, that was the case.

Q. And the security, again, released?

A. That's right. The reason for that, you have to understand the value of the properties which Brown and Casto were causing to be moved into the company. That seemed like a fair and equitable deal, looking at the whole. Just looking individually, it doesn't.

■ Furthermore, there was no prohibition against the admission of this testimony under the parol evidence rule. As National acknowledged, this extrinsic testimony was not aimed at the alteration or the amendment of the terms of the liquidation agreements.[4] To have admitted extrinsic evidence for that purpose would have been contrary to the parol evidence rule. *See*

---

**4.** On appeal, National's argument is that we should not give credence to the defendants' testimony to render the supplemental liquidation agreement unenforceable because that would be tantamount to condoning the practice of de-

frauding insurance examiners. However, fraud was neither pled nor presented to the court in the proceedings below and we do not find it appropriate to consider that allegation here.

*Farmington Nat'l Bank v. Basin Plastics, Inc.,* 94 N.M. 668, 671, 615 P.2d 985, 988 (1980). This testimony falls outside the parol evidence rule because it was admitted to establish a collateral oral agreement contemporaneously entered into with the execution of the liquidation agreement. *See Locke v. Murdoch,* 20 N.M. 522, 528, 151 P. 298, 300 (1920). The parol evidence rule "does not preclude the introduction of testimony which has no effect on the terms of a contract and which is designed to show a collateral parol agreement between the parties, for example, a contemporaneous agreement which was the inducement and consideration for the written contract." S. Gard, 3 *Jones on Evidence* § 16.6 (1972).

■ We finally address whether Brown and Casto rendered satisfaction of the accord by transferring the Sherwood and Canyon properties. Under the March accord, the substituted performance by Brown and Casto included not only the transfer of these properties to Century but also their commitment to manage the new real estate development and investment business. An executory accord that entails the future discharge of an existing obligation by substituted performance requires the full and complete execution of such substituted performance in order to discharge the existing obligation. *DeVilliers,* 360 F.2d at 295. Part performance of an accord by the debtor, accompanied by an *unjustified* failure to perform the remainder, is not operative as a satisfaction and the creditor may bring an action on the original claim. *Walker v. Rocky Mountain Recreation Corp.,* 29 Utah 2d 274, 278, 508 P.2d 538, 542 (1973).

Here, the inability of Brown and Casto to complete fully the agreed substituted performance was not unjustified. Due to no fault of their own, they were precluded from managing the new real estate venture because Century went bankrupt before the business could be established. A party to a contract, who prevents its performance by the adverse party, cannot rely on such condition to defeat his liability. *Gibbs v. Whelan,* 56 N.M. 38, 42, 239 P.2d 727, 730 (1952). " 'He who prevents a thing from being done may not avail himself of the nonperformance which he has himself occasioned; * * * the party thus prevented from discharging his part of the obligation is to be treated as though he had performed it.' " *Id.* (quoting *Empson Packing Co. v. Clawson,* 43 Colo. 188, 198, 95 P. 546, 549 (1908)). Century's failure to form the new entity would not permit Century to deny its obligation to release the note, notwithstanding that the accord included Brown and Casto's promise to manage the real estate venture. Under these circumstances, conveyance of the Sherwood and Canyon properties by Brown and Casto was sufficient to satisfy the accord in its entirety. *Cf. Tuskegee Alumni Housing Found., Inc. v. National Homes Constr. Corp.,* 450 F.Supp. 714, 720 (S.D.Ohio 1978), *aff'd,* 624 F.2d 1101 (6th Cir.1980) (substantial performance of an accord is sufficient to satisfy it).

The trial court's finding and conclusion that the defendants established an accord and satisfaction regarding the discharge of the promissory note at issue is supported by substantial evidence. We affirm the trial court's judgment in its entirety.

IT IS SO ORDERED.

SOSA, Senior Justice, and WALTERS, J., concur.