CHÁVEZ, Justice, dissenting. {74} It is undisputed that Allstate obtained the Durhams’ offer to dismiss Guest from the lawsuit with prejudice, without her having to contribute a single penny, and without compromising whatever claim(s) Guest believed she had against the Durhams and their attorneys. Having secured this promise, there simply was nothing more for Allstate to defend against or indemnify but for the additional undisputed fact that Guest refused to accept the Durhams’ offer. Because Allstate reasonably fulfilled its gratuitous promise to Guest, I respectfully dissent. {75} The sum total of Allstate’s gratuitous promise to Guest was as follows: “Allstate is willing to provide to you a defense and indemnification. Indemnification will not be provided for any ultra vires acts, which is consistent with the original defense provided to you.” The majority acknowledges that this promise was not a policy of insurance, a premium was not paid, a formal claim on a policy was not made, and this was not a contract of adhesion. Majority op. ¶ 67. However, despite clear evidence that this was an isolated, case specific promise to indemnify, made after the lawsuit was filed, the majority concludes the promise was an insurance contract allowing Guest to pursue attorney fees under Utah common law[2] or the following statutes. See NMSA 1978, § 39-2-1 (1977) (“In any action where an insured prevails against an insurer who has not paid a claim on any type of first party coverage, the insured person may be awarded reasonable attorney’s fees and costs of the action upon a finding by the court that the insurer acted unreasonably in failing to pay the claim.”); § 59A-16-30(B) (1990) (allowing the trial court to award attorney’s fees for a willful violation of the Unfair Insurance Practices Act); see also Lieber v. ITT Hartford Ins. Center, Inc., 15 P.3d 1030, 1037 (Utah 2000) (stating that under Utah common law, “[attorney fees may be awarded where a breach of the implied covenant of good faith and fair dealing, inherent in every insurance contract, has occurred”). Majority op. ¶ 58. I agree with the Court of Appeals’ logical conclusion, based on its reasonable risk distribution analysis, that the promise was not an insurance contract. See Guest v. Allstate Ins. Co., 2009-NMCA-037, ¶¶ 59-65, 145 N.M. 797, 205 P.3d 844. In addition, it seems clear from reading the Insurance Code as a whole that the Legislature was contemplating more than an isolated indemnification agreement in defining “insurance contract.” Reference is made to insurance policies throughout the Insurance Code. See, e.g., NMSA 1978, § 59A-16-20 (1984) (amended 1994); NMSA 1978, § 59A-18-2 (1984); NMSA 1978, § 59A-19-1 (1984); and other statutory citations too numerous to list. NMSA 1978, Section 39-2-1 (1977) refers to first party coverages. NMSA 1978, Section 59A-16-30 (1990) limits itself to Article 16 insurance policies and practices. {76} Even more disquieting than the majority’s conclusion that Allstate’s gratuitous promise to indemnify is an insurance contract is, having labeled it an insurance contract, the majority refuses to interpret the promise using reasonable insurance contract principles. For example, regarding a duty to settle under an insurance contract, we have stated that “[a] liability insurance company has a duty to timely investigate and fairly evaluate the claim against its insured, and to accept reasonable settlement offers within policy limits.” UJI 13-1704 NMRA. When discussing a good-faith obligation to settle, we have said that “good faith does impose upon the insurer the duty to settle whenever practicable.” Dairyland Ins. Co. v. Herman, 1998-NMSC-005, ¶ 13, 124 N.M. 624, 954 P.2d 56. “The insurer’s good-faith evaluation of the costs and benefits of settlement is generally accorded deference.” Id. ¶ 14. It seems clear from our precedent that if a claimant makes a reasonable offer which allows the insurer to eliminate any risk that the insured will have to pay money out of his or her own pocket, the insurance company must accept the offer and pay it. Id. ¶¶ 14, 15. We have also made it clear that “[t]he obligation to deal fairly and honestly rests equally upon the insurer and the insured.” Modisette v. Found Reserve Ins. Co., 77 N.M. 661, 666, 427 P.2d 21, 25 (1967). {77} Instead of incorporating these well-established principles into what they conclude is an insurance contract, the majority gives Allstate’s gratuitous promise the most expansive interpretation imaginable. Under the majority analysis, Allstate’s isolated promise to indemnify means that Allstate has to win on the merits at all costs, and if it fails to win after exhausting all trial and appellate court arguments, it must pay all damages, attorney fees, and costs on Guest’s behalf. I do not agree with this broad interpretation of Allstate’s gratuitous promise because it is unreasonable and antithetical to the aforementioned New Mexico insurance jurisprudence. Allstate should have been able to conclude the litigation as long as Guest did not have to pay any money or give up her potential claim against the Durhams and their attorneys. This is precisely what would have happened except for the fact that Guest obstructed the settlement. {78} Allstate’s attorney sent a letter dated November 19, 2004 to Guest’s attorney, Faith Reyes. The letter reads: Dear Ms. Reyes: I received a telephone call from David Berardinelli concerning settlement of this matter. Mr. Berardinelli stated that he would have no objection to including Suzanne Guest on the form of release that I had originally prepared. Enclosed please find a copy of my draft settlement agreement and release of all claims which I had originally forwarded to Mr. Berardinelli months ago. I could insert Suzanne Guest into this document as a released party and also add a sentence that no money is being paid on her behalf. Mr. Berardinelli suggested that in the form of the motion and order of dismissal of these claims, that he would not object to language whereby Suzanne Guest is preserving her claim against the Durhams and is not waiving any claim that she may have against Ms. McLean or Mr. Berardinelli. Does Suzanne want to be a part of this release? I had previously made this proposal to Mr. Royce which was rejected. Does Suzanne want to reconsider? Please let me know as soon as possible her position. {79} These terms were stated on the record during a January 28, 2005 hearing to compel settlement. Although Guest continued to refuse to be included in the settlement, Berardinelli acknowledged that, for all practical purposes, if he dismissed Allstate, he was dismissing their agent. While he discussed the possibility of keeping his claim against Guest alive, months earlier he agreed to release her. As he explained to the judge: My clients want this case over with. They are willing to accept the $35,000 as full payment of all their claims against Allstate and its agents. My real problem is that I don’t think we can settle with Allstate as the principal, and not effectively release all of the agents who are acting within the course and scope of their duties for Allstate in the course of this action. And I brought that up with Mr. Simone [Allstate’s lawyer], and I told him — we had gone back and forth and back and forth on a form of release. I finally told him, “Mr. Simone, I really don’t think there’s any effective way for us to save our claims against Suzanne Guest, not that we want to, if we’re giving you a full and complete release for everything that you’re responsible for either derivatively or directly. Therefore, we want to dismiss this case pursuant to the settlement.” Along with dismissing the lawsuit against both Allstate and Guest, Berardinelli made clear both his and his client’s willingness to stipulate that Guest “did not pay any monies, and we’re not asking her for a release.” Seemingly baffled by Guest’s refusal to settle under these terms, the court inquired of her attorney how it is that Guest is prejudiced “if she doesn’t have to sign a release.” In response, Guest’s attorney stated, “The point is, Judge, that she was brought in as a Defendant to this case. She does not want to be a part of the settlement. She can either be dismissed with prejudice, or we can continue this litigation and file — .” {80} The judge followed up with this question: “But isn’t the reason she doesn’t want to be part of a settlement because she’d be concerned that that would take away her right to sue? And I think what the Plaintiffs are saying is no.” At this point, the reason for Guest’s refusal to settle was stated by her lawyer. “Not solely, Judge, not solely. Yes, she wants a right to sue. She also wants a judgment of this Court dismissing her with prejudice on the merits; not because she’s a party to a settlement.” Exasperated, the court finally denied the motion to compel the settlement, stating “I don’t think you’ve got a settlement. It’s just too crazy — well, I won’t comment any further.” {81} Allstate clearly positioned the case to eliminate any risk that Guest would have to (1) pay any money out of her pocket as a result of the pending litigation, or (2) give up her potential lawsuit against the plaintiffs and their attorneys. The proposed release and the order dismissing the case against Guest with prejudice would have included specific language noting that Guest did not pay any money for the settlement and no money was being paid on her behalf. The release also would have contained specific language stating that the claims were disputed and that Guest was not admitting liability. Securing a dismissal of the case against Guest, with prejudice, without her having to pay a single penny, with a statement that she did not contribute to the settlement and the settlement was not an admission of any liability, but still preserving her right to sue was a masterful fulfillment of Allstate’s promise to defend and indemnify. It should be clearly noted that Allstate made a gratuitous promise to defend and indemnify Guest, not a promise to prosecute Guest’s claim against the Durhams and their attorneys. Guest remained at liberty to sue for what she thought was a clear liability case against the Durhams and their attorneys. She could have pursued her lawsuit without exposing herself to liability or Allstate to additional liability and unnecessary expense. {82} Guest’s reference, during the January hearing, to a Rule 1-041 NMRA dismissal with prejudice on the merits, must have been a reference to a Rule 1-041(B) dismissal. Under this provision, assuming the action is tried to the court without a jury, after the plaintiff rests, the defendant may seek a dismissal of the case on the ground that the plaintiff is not entitled to relief based on the evidence and law. In this case, Allstate could not guarantee a victory on the merits. {83} Guest obstructed Allstate from performing its obligation and should not be able to sue claiming breach. See Nat’l Old Line Ins. Co. v. Brown, 107 N.M. 482, 487, 760 P.2d 775, 780 (1988). A party to a contract who prevents the performance by the other party to the contract may not sue for breach of performance. Smith v. McKee, 116 N.M. 34, 37, 859 P.2d 1061, 1064 (1993). These are important principles overlooked in the majority Opinion. I would find for Allstate as a matter of law. {84} For the foregoing reasons, I respectfully dissent. I CONCUR: PATRICIO M. SERNA, Justice. . If Utah common law is relevant, then perhaps we should analyze what constitutes an insurance contract under Utah law. However, I fail to see how Utah common law is at all relevant. In New Mexico we follow the American rule, which provides that, in the absence of statute, court rule, or contractual agreement, the prevailing party will not normally receive attorney fees. New Mexico Right to Choose/NARAL v. Johnson, 1999-NMSC-028, 127 N.M. 654, 986 P.2d 450; Schroeder v. Mem’l Med. Ctr., 1997-NMSC-046, ¶ 6, 123 N.M. 719, 945 P.2d 449. Guest does not claim that she is entitled to attorney fees based on contract or court rule.