**Certiorari Granted, No. 31,602/No. 31,603, April 2, 2009**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2009-NMCA-037**

**Filing Date: February 17, 2009**

**Docket No. 27,253**

**SUZANNE GUEST and**
**THE GUEST LAW FIRM, P.C.,**

    **Plaintiffs-Appellees/Cross-Appellants,**

**v.**

**ALLSTATE INSURANCE COMPANY,**

    **Defendant-Appellant/Cross-Appellee.**

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**James A. Hall, District Judge**

Tucker Law Firm, P.C.
Steven L. Tucker
Santa Fe, NM

Guest Law Firm, P.C.
Suzanne Guest
Phoenix, AZ

for Appellees/Cross-Appellants

Modrall, Sperling, Roehl, Harris & Sisk, P.A.
Douglas A. Baker
Jennifer A. Noya
Albuquerque, NM

Kirkland & Ellis LLP
Richard C. Godfrey, P.C.
Andrew A. Kassof

1

Chicago, IL

for Appellant/Cross-Appellee

**OPINION**

**VIGIL, Judge.**

**{1}**     Defendant Allstate Insurance Company (Allstate) appeals, challenging the jury award of compensatory damages and punitive damages to Plaintiffs Suzanne Guest and the Guest Law Firm, P.C. (Guest). Guest cross-appeals, challenging the trial court action in reducing the punitive damages award and refusing to award attorney fees. We affirm in part, reverse in part, and remand for a new trial on the issue of damages.

**FACTUAL BACKGROUND**

**{2}**     This case arises from Guest's representation of Allstate in an uninsured motorist (UM) claim. In March 1997, Jamie Deveney and Travis Durham (the Durhams), were involved in an automobile accident with an uninsured driver and made a UM claim against Allstate under Deveney's automobile insurance policy. Allstate referred the case to a law firm, and the case was assigned to Ms. Guest. In 1998, Ms. Guest formed her own firm, the Guest Law Firm, P.C., where she continued to work on the Durham matter.

**{3}**     In 2001, following the conclusion of their UM claim, the Durhams filed suit, (*Durham I*), alleging a number of claims in connection with the handling of their UM claim. Guest was named as a defendant, along with Allstate. Guest contacted Allstate and demanded that Allstate defend and indemnify her. According to Guest's testimony at trial, she informed Allstate representatives that if Allstate did not defend and indemnify her she would no longer be in a position to represent Allstate due to a conflict of interest. Allstate agreed to provide Guest with a defense and engaged an attorney to represent her. The *Durham I* litigation was soon thereafter dismissed without prejudice.

**{4}**     A few months later, the Durhams filed a new complaint, (*Durham II*) in which they expanded on the allegations in the *Durham I* litigation. The Durhams asserted claims against Guest in her role as arbitration counsel for Allstate alleging violations of the New Mexico Insurance Code, aiding and abetting a violation of a fiduciary duty, unjust enrichment, malicious abuse of process, malicious defense, and prima facie tort. The claims were based on the underlying premise that deceptive claims handling practices were conducted pursuant to Allstate's aggressive national CCPR (claims core process redesign), DOLF (defense of litigated files), and SFXOL (settle for X or less) policies and procedures.

**{5}**     Allstate, however, refused to defend Guest against the *Durham II* claims. As a result, Guest contacted her malpractice carrier and it retained an attorney to represent her. Guest and her attorney met with Allstate's counsel and demanded that Allstate continue to defend Guest. Allstate refused. Following Allstate's refusal to defend, Guest returned all of

2

Allstate's cases (making up eighty-five percent of Guest's practice), with the exception of two cases that were at a stage at which their return would be too prejudicial, and declined to accept any more cases from Allstate. Ten days later, Guest's attorney wrote Allstate demanding that Allstate reconsider its position and resume Guest's defense. Allstate did not respond. Guest closed her law practice in November 2002, and moved to Phoenix.

{6}     In early 2003, Guest's malpractice carrier went into receivership and stopped paying for her attorney's services. Guest again contacted Allstate and demanded that Allstate resume its obligation to defend and indemnify her. Although Allstate denied it had a continuing obligation, it agreed to provide Guest a defense, and engaged an attorney to represent her.

{7}     In January 2004, Allstate began to pursue a global settlement with the Durhams, and on March 19, 2004, Allstate told Guest to settle on terms it had negotiated, or it would withdraw her defense. Guest refused to enter into the settlement agreement, which included a release of all claims she might have against the Durhams and their counsel. Allstate eventually stopped paying for Guest's defense and Guest again obtained her own counsel.

{8}     In June 2005, Guest filed suit against the Durhams' counsel and Allstate. The trial court granted summary judgment in favor of the Durhams' counsel, and we affirmed in *Guest v. Berardinelli*, 2008-NMCA-144, ¶ 40, 145 N.M. 186, 195 P.3d 353, *cert. denied* 2008-NMCERT-009, 145 N.M. 257, 196 P.3d 488. The trial court also granted summary judgment in favor of Allstate on all of Guest's claims except for Guest's breach of contract, breach of the implied covenant of good faith and fair dealing, and prima facie tort claims, and this case proceeded to trial. The jury found in favor of Guest and awarded compensatory and punitive damages. Following post-trial motions, the trial court reduced the amount of punitive damages. Allstate filed this appeal and Guest cross-appealed.

**DISCUSSION**

{9}     On appeal, Allstate challenges both the jury determination of its liability and its award of damages. Specifically, Allstate raises five issues on appeal: (1) whether there was an enforceable contract; (2) whether, if an enforceable contract existed, Allstate violated its terms by withdrawing Guest's defense; (3) whether it was error to submit the issue of prima facie tort to the jury; (4) whether the trial court abused its discretion in admitting certain testimony and documentation; and (5) whether the compensatory and punitive damage awards are supported by substantial evidence. In her cross-appeal, Guest argues that: (1) the trial court erred by reducing the jury award of punitive damages, and (2) the trial court erred by not permitting Guest to recover attorney fees. We address each of these issues below.

**I.     THE EXISTENCE OF A LEGAL, ENFORCEABLE CONTRACT**

**A.     The trial court did not err by submitting the existence of a contract to**

**the jury and the jury determination is supported by substantial evidence.**

**{10}**  Allstate challenges the trial court denial of its motion for a directed verdict and submission of whether there was a contract to the jury.  Allstate argues that there was no evidence that could, as a matter of law, establish that Guest provided consideration for the alleged contract to defend and indemnify her and, as a result, the trial court erred by submitting the contract claim to the jury.  We review the trial court ruling on Allstate's directed verdict motion de novo.  *See Hedicke v. Gunville*, 2003-NMCA-032, ¶ 9, 133 N.M. 335, 62 P.3d 1217.  Allstate further argues that, to the extent Guest asserts her consideration was to make herself available to work on Allstate's cases, the agreement lacked mutuality, because Guest had no obligation to comply with this promise, and Allstate had the right to terminate Guest's representation at any time.  This argument raises an issue of law which is also subject to de novo review.  *See Piano v. Premier Distrib. Co.*, 2005-NMCA-018, ¶ 8, 137 N.M. 57, 107 P.3d 11.

**{11}**  Our Supreme Court held in *C.E. Alexander & Sons, Inc. v. DEC Int'l, Inc.*:

> It is the province of the trial court to determine all questions of law, including the legal sufficiency of any asserted claim or defense.  If the evidence fails to present or support an issue essential to the legal sufficiency of an asserted claim, the right to jury trial disappears.  It is fundamental that the evidence adduced must support all issues of fact essential to the maintenance of a legally recognized and enforceable claim.  Otherwise, there can be no basis in fact for the claim, and it must be dismissed as a matter of law.

112 N.M. 89, 93, 811 P.2d 899, 903 (1991) (internal quotation marks and citation omitted).  However, "'[w]hen the existence of a contract is at issue and the evidence is conflicting or permits more than one inference, it is for the finder of fact to determine whether the contract did in fact exist.'"  *Eckhardt v. Charter Hosp. of Albuquerque, Inc.*, 1998-NMCA-017, ¶ 39, 124 N.M. 549, 953 P.2d 722 (quoting *Garcia v. Middle Rio Grande Conservancy Dist.*, 99 N.M. 802, 807, 664 P.2d 1000, 1005 (Ct. App. 1983), *overruled on other grounds by Montoya v. AKAL Sec., Inc.*, 114 N.M. 354, 357, 838 P.2d 971, 974 (1992)); *see also Segura v. Molycorp, Inc.*, 97 N.M. 13, 18, 636 P.2d 284, 289 (1981).

**{12}**  "Ordinarily, to be legally enforceable, a contract must be factually supported by an offer, an acceptance, consideration, and mutual assent."  *Hartbarger v. Frank Paxton Co.*, 115 N.M. 665, 669, 857 P.2d 776, 780 (1993).  Consideration is essential to the enforcement of a contract, *see Romero v. Earl*, 111 N.M. 789, 791, 810 P.2d 808, 810 (1991), and "consists of a promise to do something that a party is under no legal obligation to do or to forbear from doing something he [or she] has a legal right to do."  *Heye v. Am. Golf Corp.*, 2003-NMCA-138, ¶ 12, 134 N.M. 558, 80 P.3d 495.  In order to constitute consideration, a promise must be binding.  "When a promise puts no constraints on what a party may do in the future—in other words, when a promise, in reality, promises nothing—it is illusory,

4

and it is not consideration." *Id.* Furthermore, "[a] valid contract must possess mutuality of obligation," meaning that "both sides must provide consideration." *Bd. of Educ. v. James Hamilton Constr. Co.*, 119 N.M. 415, 420, 891 P.2d 556, 561 (Ct. App. 1994).

**{13}** Where a contract leaves it entirely optional for one of the parties to perform, the contract is not founded on mutual promises and is, generally, not binding or enforceable. *Acme Cigarette Servs., Inc. v. Gallegos*, 91 N.M. 577, 581, 577 P.2d 885, 889 (Ct. App. 1978). "An optional contract may be enforced, however, when mutuality comes into existence by reason of an executed consideration." *Id.* "Accordingly, where a contract lacks mutuality at its inception, performance may act as a substitute for consideration." *Talbott v. Roswell Hosp. Corp.*, 2005-NMCA-109, ¶ 18, 138 N.M. 189, 118 P.3d 194; *see also Acme Cigarette Servs., Inc.*, 91 N.M. at 581, 577 P.2d at 889 ("In other words, where one party not bound by an option contract accepts the benefits under the contract, this party cannot at the same time avoid the obligation under the contract."). For performance to constitute consideration in support of a putative contract, Guest's actions must have been something for which Allstate bargained. *See Talbott*, 2005-NMCA-109, ¶ 19.

**{14}** Guest presented evidence to the jury that would have permitted more than one inference regarding the existence of consideration. Specifically, Guest testified that she informed Allstate that if Allstate did not defend and indemnify her she would no longer "be in a position to handle their cases" due to a conflict of interest. When she attempted to return a case at that time, she was persuaded by Allstate to keep the case and continued her work on it, and she was assured by Allstate that it would take care of the matter. Guest further testified that she was later contacted by Allstate and was informed that Allstate would defend her and that she could choose her own counsel. Guest said that she continued to work on cases she had already accepted from Allstate, and continued to accept new cases until March 2002. Guest asserted that her agreement with Allstate was that Allstate would defend her until the Durham claims were resolved, and that she would have control over her own defense. Allstate, however, presented testimony that Guest had never promised Allstate anything in return for a defense and indemnification, that Allstate offered to pay for Guest's defense as a gratuitous gesture, and that no contract was ever formed. We conclude that this evidence permits more than one inference about whether Allstate bargained with Guest to provide a defense in return for Guest's continued handling of its cases. Accordingly, we conclude that, in light of this conflicting evidence as to whether a contract existed, the trial court did not err in submitting the issue to the jury.

**{15}** Allstate further argues that Guest's continued work on Allstate's cases and her acceptance of additional cases cannot constitute consideration because Guest had already closed her law practice at the time Allstate agreed to represent her. However, Allstate's argument presupposes that the contract was entered into in early 2003, after Guest's malpractice carrier went into receivership. Evidence contrary to this conclusion was presented at trial. Specifically, Guest testified that the contract between herself and Allstate was entered into when *Durham I* was filed, and the agreement was that Allstate would represent her until the Durham claims were resolved. Once again, there is conflicting

5

evidence about when the contract was entered into and its terms. We are therefore unpersuaded by Allstate's arguments.

**{16}** We conclude that the evidence detailed above was sufficient to support the jury determination that a contract existed. This Court will not disturb a jury verdict unless it is unsupported by substantial evidence. *See Barnes v. Sadler Assocs., Inc.*, 95 N.M. 334, 335, 622 P.2d 239, 240 (1981). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, and has been defined as evidence of substance which establishes facts from which reasonable inferences may be drawn." *Tapia v. Panhandle Steel Erectors Co.*, 78 N.M. 86, 89, 428 P.2d 625, 628 (1967) (citation omitted). In reviewing whether substantial evidence exists, this Court resolves all disputed facts in favor of the successful party and indulges all reasonable inferences in support of the verdict. *Id.*

**B. Rule 16-108 NMRA Does Not Void the Contract**

**{17}** Allstate contends that, even if a contract was formed, the contract to defend Guest is not enforceable because it violates Rule 16-108 of the New Mexico Rules of Professional Conduct. Allstate raised the issue with the trial court in its motion for summary judgment and motion for directed verdict at the close of Guest's case-in-chief. At both junctures, the trial court ruled that there were issues of fact regarding the applicability of the rule to the type of transaction at issue in this case, and if the rule was applicable, there were issues of fact regarding Guest's compliance with its provisions.

**{18}** The trial court refused to resolve the issue as a matter of law. Allstate therefore requested that the trial court instruct the jury, based on *Van Orman v. Nelson*, 78 N.M. 11, 427 P.2d 896 (1967), that a violation of Rule 16-108 would render the contract between an attorney and a client voidable by the client. The trial court refused Allstate's tendered instruction, stating a concern with the applicability of *Van Orman* since it was decided prior to enactment of the Rules of Professional Conduct. Nevertheless, it did submit an instruction to the jury instructing it on what Rule 16-108 provides.

**{19}** Allstate contends that it was error not to find the contract void as a matter of law, and that the refusal to submit its *Van Orman* instruction was error. Allstate contends that, although the trial court submitted an instruction stating that attorneys and clients may not enter into business transactions, the trial court erred when it failed to further instruct the jury, as requested, that when they do, a client may void the contract.

**{20}** We refer to Rule 16-108(A) as the business transaction rule. It provides that an attorney may not enter into a business transaction with his or her client unless:

> (1) the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner which can be reasonably

6

understood by the client;

>	(2)	the client is given a reasonable opportunity to seek the advice of independent counsel in the transaction; and

>	(3)	the client consents in writing thereto.

The commentary to Rule 16-108(A) states that it does not apply "to standard commercial transactions between the lawyer and the client for products or services that the client generally markets to others." *Id.* At trial, testimony provided by Guest's legal ethics expert addressed whether or not the contract between Guest and Allstate was subject to the "standard commercial transaction" exception. However, regardless of whether the contractual relationship qualifies as a standard commercial transaction, we hold that a contract between a client and an attorney is not, as a matter of law, rendered unenforceable by Rule 16-108.

**{21}** The Rules of Professional Conduct have limited application outside the disciplinary process. Our Supreme Court has previously held that the former Code of Professional Responsibility was "established to discipline attorneys [and] not intended to provide a foundation for civil liability." *Garcia v. Rodey, Dickason, Sloan, Akin & Robb, P.A.*, 106 N.M. 757, 762, 750 P.2d 118, 123 (1988). This principle is also reflected in the preamble to the Rules of Professional Conduct:

> Violation of a rule should not give rise to a cause of action nor should it create any presumption that a legal duty has been breached. The rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies. They are not designed to be a basis for civil liability. Furthermore, the purpose of the rules can be subverted when they are invoked by opposing parties as procedural weapons. The fact that a rule is a just basis for a lawyer's self-assessment, or for sanctioning a lawyer under the administration of a disciplinary authority, does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the rule. Accordingly, nothing in the rules should be deemed to augment any substantive legal duty of lawyers or the extra-disciplinary consequences of violating such a duty.

**{22}** Further support for our holding can be found in decisions of other states concluding that a violation of the business transaction rule does not render a contract unenforceable. *See Ankerman v. Mancuso*, 830 A.2d 388, 391-93 (Conn. App. Ct. 2003) (reversing the trial court determination that the business transaction rule served as a special defense and barred the enforcement of a note held by an attorney and secured by a mortgage on property belonging to the attorney's client); *Liggett v. Young*, 877 N.E.2d 178, 180-83 (Ind. 2007) (relying on the preamble to the Indiana Rules of Professional Conduct in determining that the business transaction rule could not be relied on to resolve the issue of civil liability under

7

a construction contract between an attorney and client). Allstate's reliance on disciplinary proceedings against New Mexico licensed attorneys, *see, e.g.*, *In re Darnell*, 1997-NMSC-025, 123 N.M. 323, 940 P.2d 171, and *In re Schmidt*, 118 N.M. 213, 880 P.2d 310 (1994), does not support Allstate's argument that a violation of Rule 16-108 makes a contract between an attorney and a client unenforceable as a matter of law.

**{23}** Our holding does not mean, however, that clients are without a remedy when they enter into a contract with their attorney. As indicated by the commentary to Rule 16-108, the rule against attorneys entering into business transactions with clients was promulgated to ensure that transactions between clients and attorneys remain fair and reasonable and to ensure that attorneys do not exercise an unfair advantage over their clients. To that end, "[i]f there has been 'an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party,' a contract may be held to be unconscionable." *Guthmann v. La Vida Llena*, 103 N.M. 506, 510, 709 P.2d 675, 679 (1985) (quoting *Bowlin's, Inc. v. Ramsey Oil Co.*, 99 N.M. 660, 668, 662 P.2d 661, 669 (Ct. App. 1983)). "Lack of meaningful choice relates to a procedural analysis of unconscionability and is determined by examining the circumstances surrounding the contract formation, including the particular party's ability to understand the terms of the contract and the relative bargaining power of the parties." *Id.* We believe this is the principle for which *Van Orman* stands.

**{24}** In *Van Orman*, our Supreme Court upheld the trial court judgment rescinding all conveyances between an attorney and his client. 78 N.M. at 24, 427 P.2d at 909. Of import to the decision was the client's inexperience and lack of information regarding legal and business affairs, along with her deteriorating mental health at the time she and the attorney entered into the disputed transactions. *Id.* at 13-15, 22-23, 427 P.2d at 898-900, 907-08. To this end, our Supreme Court stated:

> Contracts between client and attorney will be closely scrutinized by the courts and when a client challenges the fairness of such contract the attorney has the burden of showing not only that he used no undue influence but that in every particular he acted honestly and in good faith.

*Id.* at 23, 427 P.2d at 908. Thus, we conclude that *Van Orman* does not stand for the proposition that all contracts entered into between a client and an attorney are unenforceable, but that a contract between a client and an attorney must be fair, and the client must have had the opportunity to make a meaningful choice, or it may be found to be unconscionable. We therefore conclude that refusal of the trial court to submit Allstate's requested instruction—"[a] contract that violates an attorney's professional obligations to her client may be voidable by the client"—was not error. *See State v. Nieto*, 2000-NMSC-031, ¶ 17, 129 N.M. 688, 12 P.3d 442 ("A trial court's refusal to submit a jury instruction is not error if the submission of the instruction would mislead the jury by promoting a misstatement of the law.").

8

**{25}** Finally, while we conclude that the trial court should not have submitted the issue to the jury, we hold that there was no prejudice to Allstate where the jury found either that Rule 16-108 was inapplicable, or that Guest complied with its requirements. *See In re Estate of Heeter*, 113 N.M. 691, 695, 831 P.2d 990, 994 (Ct. App. 1992) ("On appeal, error will not be corrected if it will not change the result.").

## II. ALLSTATE DID NOT FULFILL ITS OBLIGATION UNDER THE CONTRACT

**{26}** Allstate contends that, even if there was a valid contract, it did not breach the contract, but satisfied all of its material terms. We understand Allstate to argue that, as a matter of law, it "satisfied any possible contractual obligation to defend and indemnify Guest" by "negotiating a settlement where Guest would be released without paying a penny." However, Allstate has not pointed to any authorities in support of this argument. Instead, Allstate suggests that this Court should extend the rationale of cases involving the good-faith obligations of insurers to their insureds in negotiating settlements, and hold that, once Allstate negotiated a potential settlement to which Guest refused to agree, Allstate satisfied its obligation under the contract. Even if we were to apply principles from insurer-insured relationships to the present case, Allstate has not provided any authority to suggest a conclusion that it discharged its obligation by negotiating a settlement which Guest would not agree to. To the extent Allstate relies on *Dairyland Insurance Co. v. Herman*, 1998-NMSC-005, 124 N.M. 624, 954 P.2d 56, *Teigen v. Jelco of Wisconsin, Inc.*, 367 N.W.2d 806 (Wis. 1985), and *Aetna Casualty & Surety Co. v. Coronet Insurance Co.*, 358 N.E.2d 914 (Ill. App. Ct. 1976), these cases do not support Allstate's argument.

**{27}** In *Dairyland*, our Supreme Court held that an insurer has a duty to avoid exposing an insured to greater liability and settle when appropriate in order to protect the interests of the insured. 1998-NMSC-005, ¶¶ 13-15. *Dairyland* does not, however, hold that an insurer discharges all of its obligations to an insured by negotiating a settlement which the insured does not agree to. *See Fernandez v. Farmers Ins. Co. of Ariz.*, 115 N.M. 622, 627, 857 P.2d 22, 27 (1993) ("[C]ases are not authority for propositions not considered." (internal quotation marks and citation omitted)). In *Teigen*, the Wisconsin Supreme Court held that a primary insurer satisfied its obligation to its insured when it entered into a settlement agreement with the plaintiffs and had an agreement in place to pay an amount, through a structured settlement, in excess of policy limits. The court based its holding that the insurer satisfied its duty to defend on language from the insurance policy, which stated that the insurer was not obligated "to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements," and not on general duties owed by an insurer to its insured. *Teigen*, 367 N.W.2d at 810 (internal quotation marks omitted). Similar policy provisions controlling the duty of the insurer are not present in this case. Finally, nowhere in *Aetna Casualty & Surety Co.*, does the Illinois appellate court discuss whether an insurer's obligation to defend an insured is discharged once it negotiates a settlement to which the insured refuses to consent. *See generally* 358 N.E.2d 914. Because Allstate cites no authority in support of its proposition, we assume no such

9

authority exists. *See In re Adoption of Doe*, 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984) (providing that where a party cites no authority to support an argument, we may assume no such authority exists); *see also Farmers, Inc. v. Dal Mach. & Fabricating, Inc.*, 111 N.M. 6, 8, 800 P.2d 1063, 1065 (1990) (providing that the burden is on the appellant to clearly demonstrate that the trial court erred).

**{28}** Moreover, Allstate's reliance on *National Old Line Insurance Co. v. Brown*, 107 N.M. 482, 760 P.2d 775 (1988), and *Gibbs v. Whelan*, 56 N.M. 38, 239 P.2d 727 (1952), to argue that Guest cannot complain of nonperformance where she prevented performance, is misplaced. *See Nat'l Old Line Ins.*, 107 N.M. at 487, 760 P.2d at 780 ("A party to a contract, who prevents its performance by the adverse party, cannot rely on such condition *to defeat his liability*." (emphasis added)); *Gibbs*, 54 N.M. at 41-42, 239 P.2d at 730 ("A party to a contract cannot take advantage of his own act or omission *to escape liability* thereon." (emphasis added)). Although "[e]ach party to an enforceable agreement has a duty not to prevent performance by the other party[,]" *see Estate of Griego ex rel. Griego v. Reliance Standard Life Ins. Co.*, 2000-NMCA-022, ¶ 27, 128 N.M. 676, 997 P.2d 150, Guest did not prevent Allstate from fulfilling its duty to defend. Allstate could have satisfied its contract with Guest by representing her.

**{29}** Finally, there was substantial evidence to support the jury determination that Allstate breached its contract with Guest and that it violated the implied covenant of good faith and fair dealing. *See Landavazo v. Sanchez*, 111 N.M. 137, 138, 802 P.2d 1283, 1284 (1990) ("Substantial evidence is such relevant evidence that a reasonable mind would find adequate to support a conclusion."); *Weidler v. Big J Enters. Inc.*, 1998-NMCA-021, ¶ 30, 124 N.M. 591, 953 P.2d 1089 (stating that in reviewing a sufficiency of the evidence claim, the reviewing court views the evidence in the light most favorable to the prevailing party and disregards evidence and inferences to the contrary). The jury was instructed that a breach occurs when a person fails to perform a contractual obligation when that performance is called for, or when a party fails to act in good faith, and that good faith requires that a party act honestly and in accordance with standards of fair dealing under the surrounding circumstances. *See Atler v. Murphy Enters., Inc.*, 2005-NMCA-006, ¶ 13, 136 N.M. 701, 104 P.3d 1092 ("Jury instructions become the law of the case against which the sufficiency of the evidence is to be measured." (internal quotation marks and citation omitted)).

**{30}** Guest testified that when *Durham I* was filed she contacted Allstate and asked to be defended and indemnified, and Allstate agreed; that the terms of the agreement were that Allstate would defend her until a final conclusion was reached and that Guest would control the litigation; that when *Durham II* was filed, based on the same allegations, Allstate refused to defend and indemnify Guest; that Guest made multiple demands that Allstate defend her; and that once Allstate agreed to Guest's continued defense and indemnification after Guest's malpractice carrier became insolvent, Allstate threatened to take away Guest's defense if she did not agree to the settlement Allstate had negotiated to fully release the Durhams and their counsel from any liability stemming from the prosecution of *Durham I* and *II*. Based on this testimony, we hold that a reasonable jury could have concluded that Allstate breached a

10

material term of the contract by refusing to defend and indemnify Guest or failed to act in good faith by threatening to discontinue Guest's defense if she refused to consent to the settlement agreement negotiated by Allstate. *See Famiglietta v. Ivie-Miller Enters., Inc.*, 1998-NMCA-155, ¶ 17, 126 N.M. 69, 966 P.2d 777 (describing a material breach as the "failure to do something that is so fundamental to the contract that the failure to perform that obligation defeats an essential purpose of the contract" (internal quotation marks and citation omitted)); *Sanders v. FedEx Ground Package Sys., Inc.*, 2008-NMSC-040, ¶ 8, 144 N.M. 449, 188 P.3d 1200 (observing that the implied covenant of good faith and fair dealing is breached when "a party seeks to prevent the contract's performance or to withhold its benefits from the other party" (internal quotation marks and citation omitted)).

**{31}**    We therefore conclude that Allstate has failed to demonstrate that (1) it discharged its duty to Guest by negotiating a settlement unacceptable to Guest; (2) Guest prevented its performance; and (3) there was insufficient evidence to support the jury determination that Allstate failed to meet its obligation to Guest.

### III.    SUBMITTING THE CLAIM OF PRIMA FACIE TORT TO THE JURY WAS NOT ERROR

**{32}**    Allstate contends that the trial court erred by submitting the claim of prima facie tort to the jury and that its submission was duplicative, confused the jury, and resulted in an inconsistent verdict from which there is "no way to discern what proportion, if any, of the verdict was a result of [jury] error." Allstate contends that the error arises because Guest's prima facie tort claim and her breach of contract claim were both predicated on the same facts. After reviewing Allstate's argument, we conclude that the trial court did not err by submitting the claim of prima facie tort to the jury.

**{33}**    "Prima facie tort is intended to provide a remedy for persons harmed by acts that are intentional and malicious, but otherwise lawful, which fall outside of the rigid traditional intentional tort categories." *Bogle v. Summit Inv. Co.*, 2005-NMCA-024, ¶ 22, 137 N.M. 80, 107 P.3d 520 (internal quotation marks and citation omitted). New Mexico recognized a cause of action for prima facie tort in *Schmitz v. Smentowski*, 109 N.M. 386, 394-97, 785 P.2d 726, 734-37 (1990). In doing so, however, our Supreme Court recognized that "prima facie tort should not be used to evade stringent requirements of other established doctrines of law." *Id.* at 398, 785 P.2d at 738. Thus, while a plaintiff may plead prima facie tort in the alternative, New Mexico appellate courts have held that where a plaintiff does not assert any separate factual basis to support its prima facie tort claim, and the plaintiff's proof is susceptible to submission under another tort, the action should be submitted to the jury on the other cause of action and not as a prima facie tort claim. *See id.* at 396, 785 P.2d at 736; *Healthsource, Inc. v. X-Ray Assocs. of N.M., P.C.*, 2005-NMCA-097, ¶¶ 35-37, 138 N.M. 70, 116 P.3d 861.

**{34}**    In *Aetna Finance Co. v. Gaither*, 118 N.M. 246, 249, 880 P.2d 857, 860 (1994), our Supreme Court affirmed the trial court refusal to submit a claim of prima facie tort to the jury.

11

The Court relied on *Bandag of Springfield, Inc. v. Bandag, Inc.*, 662 S.W.2d 546, 552-53 (Mo. Ct. App. 1983), which explained that if, at the close of the evidence, the plaintiff failed to provide proof of an intentional lawful act—which distinguishes prima facie tort from traditional intentional torts—prima facie tort could not be submitted to the jury. Our Supreme Court recognized that this principle "has long been established in New Mexico by our cases stating that a court may properly refuse to submit a theory to the jury if it is not supported by the evidence." *Aetna Fin. Co.*, 118 N.M. at 249, 880 P.2d at 860 (citing *Fleet Mortgage Corp. v. Schuster*, 112 N.M. 48, 50, 811 P.2d 81, 83 (1991) (affirming summary judgment dismissal of prima facie tort claim where the plaintiff failed to present evidence of element of intent), and *State v. Akin*, 75 N.M. 308, 312, 404 P.2d 134, 137 (1965) (holding that the court properly refused to instruct on an issue for which no evidence was offered)). Similarly, in *Beavers v. Johnson Controls World Services, Inc.*, 120 N.M. 343, 351-52, 901 P.2d 761, 769-70 (Ct. App. 1995), we held that, where the factual predicate for the two claims are different, it is not error for both prima facie tort and intentional infliction of emotional distress to be submitted to the jury.

**{35}**     Allstate argues that the factual predicate for Guest's breach of contract and prima facie tort claim are the same, and therefore the trial court erred by submitting both claims to the jury. We disagree. As this Court noted in *Healthsource, Inc.*: "[T]he value and validity of prima facie tort as a separate cause of action depends upon its ability to offer relief for the intentional infliction of harm where the actor's otherwise lawful conduct cannot be brought within other more traditional categories of liability." 2005-NMCA-097, ¶ 36 (internal quotation marks and citation omitted). Here, there was evidence presented that would support a jury determination that either Allstate entered into a contract with Guest and failed to fulfill its obligations (resulting in a breach of contract), or Allstate provided a gratuitous defense, not arising out of any contractual obligation, but engaged in a series of acts intended to harm Guest. If the jury concluded based on the evidence before it that no contract existed, then Guest would have no breach of contract claim. As a result, the prima facie tort claim offered relief that was not available under the breach of contract claim, by providing a means of addressing conduct by Allstate that would otherwise be lawful in the absence of a contract, but would support liability in tort. Furthermore, there was sufficient evidence to support submitting Guest's prima facie claim to the jury. *See Thompson Drilling, Inc. v. Romig*, 105 N.M. 701, 705, 736 P.2d 979, 983 (1987) (providing that if a legal theory is supported by the evidence, a party is entitled to have the jury instructed on that theory). Accordingly, we find no error.

**{36}**     To the extent that Allstate argues that inherent inconsistencies in the jury verdict require reversal or, at the very least, a new trial, we conclude that, after having the verdict read aloud by the judge and the jury polled at Allstate's request, Allstate waived its right to challenge the inconsistency in the verdict by failing to bring the matter to the trial court's attention before the jury was discharged. *See Ramos v. Rodriguez*, 118 N.M. 534, 536, 882 P.2d 1047, 1049 (Ct. App. 1994) (holding that the defendant waived his opportunity to challenge a facially inconsistent verdict where he failed to raise the issue before the jury's discharge and rejecting the defendant's argument that he did not have an opportunity to object when the verdict had been read aloud and the jury had been polled); *see also G & G Servs., Inc. v. Agora Syndicate,*

12

*Inc.*, 2000-NMCA-003, ¶¶ 41, 42, 128 N.M. 434, 993 P.2d 751 ("A litigant who fails to object to an alleged inconsistency in a jury's verdict before the jury is dismissed may be held to have waived any further challenge to the alleged inconsistency."); *Thompson Drilling Inc.*, 105 N.M. at 703, 736 P.2d at 981 ("[T]he right to object to an improper verdict is waived when not made at the time of the return of the verdict and cannot be reclaimed and revived by resorting to a motion for a new trial or on appeal.").

**{37}** Finally, because we hold substantial evidence supports Guest's breach of contract claim, we do not address whether substantial evidence supports a jury determination that a prima facie tort was also committed.

## IV. EVIDENTIARY ERRORS

### A. Allstate Acquiesced in Admission of an E-mail as a Business Record

**{38}** Allstate argues that the trial court committed prejudicial error by admitting an e-mail written by the attorney retained by Allstate to represent Guest, opining that Allstate's attorney "would fit right in at Arthur Anderson ('start shredding') or Enron," as a business record. Guest argues that Allstate cannot challenge the admission of the e-mail as a business record on appeal because Allstate failed to object to its admission at trial on that basis. The trial transcript discloses that when Guest raised the issue of admission of the e-mail as a business record at trial, Allstate did not object that it was inadmissible as a business record. The only objection Allstate made was that it would be more prejudicial than probative pursuant to Rule 11-403 NMRA.

**{39}** In order "[t]o preserve error, [a] party must raise the same objection on appeal that was raised at trial." *Hinger v. Parker & Parsley Petroleum Co.*, 120 N.M. 430, 441, 902 P.2d 1033, 1044 (Ct. App. 1995) (second alteration in original) (internal quotation marks and citation omitted); *see also Woolwine v. Furr's, Inc.*, 106 N.M. 492, 496, 745 P.2d 717, 721 (Ct. App. 1987) ("To preserve an issue for review on appeal, it must appear that [the] appellant fairly invoked a ruling of the trial court on the same grounds argued in the appellate court."). Because Allstate made no objection to the admission of the exhibit as a business record, we hold that Allstate acquiesced in its admission and waived its right to challenge its admission as a business record on appeal. By acquiescing in the admission of the exhibit as a business record and not informing the trial court of the reasons the exhibit did not qualify as a business record, Allstate may not now complain of the alleged error. *See Cordova v. Taos Ski Valley, Inc.*, 121 N.M. 258, 263, 910 P.2d 334, 339 (Ct. App. 1995) ("A party who has contributed, at least in part, to perceived shortcomings in a trial court's ruling should hardly be heard to complain about those shortcomings on appeal."); *see also Hodgkins v. Christopher*, 58 N.M. 637, 641, 274 P.2d 153, 155 (1954) ("It is too well established for dispute that a party litigant may not invite error and then take advantage of it."). To the extent that Allstate refers to its general objection to correspondence from the attorney to Guest as hearsay, we note that Allstate withdrew its objection and cannot now rely on that withdrawn objection to argue that the issue was preserved. *Cf. State v. Frazier*, 2007-NMSC-032, ¶ 38, 142 N.M. 120, 164 P.3d 1 ("A party

13

cannot rely on a withdrawn objection to preserve error." (internal quotation marks, alteration, and citation omitted)).

**{40}** We therefore decline to address Allstate's argument that the trial court erred in admitting the e-mail as a business record. We further decline to review the trial court determination that the e-mail was more probative than prejudicial. Although Allstate's objection at trial was premised on Rule 11-403, Allstate has provided no argument or authority on appeal, indicating how the trial court abused its discretion in balancing the probative value of the e-mail against its prejudicial effect. *See Allen v. Amoco Prod. Co.*, 114 N.M. 18, 22, 833 P.2d 1199, 1203 (Ct. App. 1992) (stating that it is the appellant's burden to demonstrate error); *see also Wilburn v. Stewart*, 110 N.M. 268, 272, 794 P.2d 1197, 1201 (1990) ("Issues raised in appellate briefs that are unsupported by cited authority will not be reviewed . . . on appeal.").

## B. Admission of the McKinsey Documents Was Not Error

**{41}** Allstate also contends that the trial court erred by admitting documents relating to Allstate's claims practices, referred to as the "McKinsey documents." Allstate objected to the admission of the McKinsey documents at trial on the basis of relevance, foundation, and Rule 11-403. On appeal, this Court reviews a trial court decision to admit or exclude evidence for an abuse of discretion. *See Coates v. Wal-Mart Stores, Inc.*, 1999-NMSC-013, ¶ 36, 127 N.M. 47, 976 P.2d 999. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case." *Id.* (internal quotation marks and citation omitted). "A trial court abuses its discretion by its ruling only if we can characterize it as clearly untenable or not justified by reason." *Id.* (internal quotation marks and citation omitted).

**{42}** Relevant evidence is evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 11-401 NMRA. Relevant evidence is generally admissible pursuant to Rule 11-402 NMRA, and any doubt as to whether the evidence is relevant should be resolved in favor of admissibility. *See Coates*, 1999-NMSC-013, ¶ 37.

**{43}** Allstate contends that the McKinsey documents were not relevant evidence because they contained recommendations regarding how Allstate handled claims by its insureds, Guest was not an insured, and not all of the recommendations were adopted by Allstate. Allstate's argument is unpersuasive. It is not Allstate's adoption of these recommendations or their applicability to Guest which makes them relevant. Instead, it is the impact that these documents had on Allstate's dealings with Guest—Allstate's desire not to make the documents public and its alleged pressure on Guest to settle in order to avoid the documents being made public—that makes the documents relevant in this case. *See McNeill v. Burlington Res. Oil & Gas Co.*, 2008-NMSC-022, ¶ 14, 143 N.M. 740, 182 P.3d 121 ("[W]hatever naturally and logically tends to establish a fact in issue is relevant." (alteration in original) (internal quotation marks and citation omitted)). Accordingly, we cannot conclude that the trial court abused its discretion in determining that the McKinsey documents constitute relevant evidence. *See McDowell v. Napolitano*, 119 N.M. 696, 702, 895 P.2d 218, 224 (1995) (stating that an appellate court will

14

only find that the trial court abused its discretion by admitting evidence "when the [trial] court's decision is without logic or reason, or . . . is clearly unable to be defended" (internal quotation marks and citation omitted)).

**{44}**     Allstate also argues that the trial court abused its discretion by admitting the McKinsey documents as admissions by a party-opponent, because a proper foundation for their admission was not established.  Referring to Rule 11-602 NMRA, Allstate contends that Guest was unable to lay the proper foundation because she had not been involved in the drafting or compiling of the McKinsey documents and therefore had no personal knowledge regarding the documents. Rule 11-602 provides that "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."  The personal knowledge requirement of Rule 11-602 is intended to ensure that the evidence presented is reliable. *See* Fed. R. Evid. 602 advisory committee's notes (stating that the personal knowledge requirement is intended to ensure the most reliable source of information); *see also Albuquerque Redi-Mix, Inc. v. Scottsdale Ins. Co.*, 2007-NMSC-051, ¶ 9, 142 N.M. 527, 168 P.3d 99 (stating that, "[w]hen our state court rules closely track the language of their federal counterparts, . . . federal construction of the federal rules is persuasive authority for the construction of New Mexico rules").

**{45}**     Admissions of a party opponent, however, are admissible not because the circumstances surrounding the statements make them reliable, but because they are statements made by a party opponent.  *See* 4 Jack B. Weinstein et al., *Weinstein's Evidence* ¶ 801(d)(2)[01], at 801-232 to 801-233 (1996) (stating that "[u]nlike the majority of hearsay exceptions, which are grounded upon a probability of trustworthiness, the admissibility of an admission made by the party himself does not rest upon a notion that the circumstances in which it was made furnish the trier of fact with adequate means of evaluating the statement[,]" and noting that the "admissions are received because a party cannot complain about the lack of an opportunity to cross-examine himself"); *see also Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643, 667 (10th Cir. 2006) (providing that an admission by a party opponent needs no indicia of trustworthiness to be admitted); *Harris v. United States*, 834 A.2d 106, 116 (D.C. 2003) ("Party admissions differ from most out-of-court statements in that their admissibility does not require the demonstration of guarantee[s] of trustworthiness but is based rather upon the identity of the speaker." (alteration in original) (internal quotation marks and citation omitted)).

**{46}**     Our Supreme Court has recognized that "[a]n opposing party may introduce out-of-court statements made by its opponent under the theory that the declarant party is in court and has the opportunity to deny or explain such statements[.]"  *See State v. McClaugherty*, 2003-NMSC-006, ¶ 27, 133 N.M. 459, 64 P.3d 486.  Based in part on this principle, a majority of jurisdictions hold that admissions by a party-opponent need not be based on personal knowledge to be admissible. *See* 2 Kenneth S. Broun, et al., *McCormick on Evidence* § 255, at 183 (6th ed. 2006) ("[T]he traditional view that firsthand knowledge is not required for admissions is accepted by the vast majority of courts and adopted by the Federal Rules." (footnote omitted)); *see also Blackburn v. United Parcel Serv., Inc.*, 179 F.3d 81, 96 (3d Cir. 1999) ("Admissions by a party-opponent need not be based on personal knowledge to be admitted under Rule 801(d)(2).");

15

*S.E.C. v. Merrill Scott & Assocs., Ltd.*, 505 F. Supp. 2d 1193, 1200 (D. Utah 2007) ("Admissions by party-opponents are admissible, even if they are not based on personal knowledge."). Not only does the party have an opportunity to explain or deny such statements, we note that "the possibility is substantial that the declarant may have significant information that the opponent cannot prove." 2 Broun, *supra*, § 255, at 183.

**{47}** While we hold that personal knowledge is not required for an admission by a party-opponent to be received into evidence, a foundation must still be laid. *See* 4 Weinstein, *supra*, at ¶ 801(d)(2)[01], at 801-251 ("A proper foundation for receipt of the admission must be established."). In determining the necessary foundation for an admission by a party opponent, we are guided by Rule 11-901(A) NMRA: "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Where the proponent claims that the matter in question is an admission by a party-opponent, "[a]ll that is required is that the statements have been made by the party or his representative and that it be introduced by an adverse party as in some way relevant[.]" *State v. Vallejos*, 98 N.M. 798, 799, 653 P.2d 174, 175 (Ct. App. 1982) (quoting 4 Weinstein, *supra*, ¶ 801(d)(2)(A)[01] (1981)).

**{48}** We hold that Guest established the requisite foundation for admission of the documents into evidence as an admission by a party-opponent. Specifically, Guest testified that the documents were Allstate's documents that were provided to her by Allstate's counsel. Moreover, any doubt that these documents were prepared by Allstate or at Allstate's instruction was resolved by the subsequent testimony of the assistant vice-president of claims for Allstate, that the McKinsey documents contained both documents prepared by Allstate and documents prepared by the McKinsey Corporation at Allstate's request.

**{49}** Allstate also contends that the trial court erred in balancing the probative value against the prejudicial effect of the McKinsey documents. To the extent Allstate cites *Ohlson v. Kent Nowlin Construction Co.*, 99 N.M. 539, 660 P.2d 1021 (Ct. App. 1983), for the proposition that the McKinsey documents were not relevant and their probative value was outweighed by their prejudicial effect because they constitute evidence of "unrelated matters," we disagree. As discussed above, the McKinsey documents are not "unrelated" to the current litigation. To the contrary, there was testimony at trial that the possibility that the McKinsey documents would be made public was the impetus for Allstate attempting to secure a global settlement, and led to Allstate's pressure on Guest to settle. The McKinsey documents therefore bear directly on how Allstate treated Guest and on Allstate's withdrawal of Guest's defense for failure to settle. Accordingly, we conclude that Allstate has not demonstrated that the trial court abused its discretion in its Rule 11-403 determination. *See City of Santa Fe v. Komis*, 114 N.M. 659, 663, 845 P.2d 753, 757 (1992) ("The trial court is vested with a great deal of discretion in applying Rule [11-]403, and we will reverse the trial court's decision to admit or exclude evidence, only upon a showing that the court abused its discretion.").

**{50}** Finally, to the extent that Allstate raises other evidentiary issues, but fails to provide legal argument or citation to authority, we do not review those issues. *See Wilburn*, 110 N.M.

at 272, 794 P.2d at 1201.

## V. DAMAGES

**{51}** Allstate raises several challenges to the jury award of damages, and Guest challenges the trial court reduction of the punitive damages in her cross-appeal. Because we conclude that Guest was not entitled to recover damages based on future earnings and we remand for a new trial on those damages to which Guest is entitled, we do not address Allstate's other arguments or Guest's challenge to the trial court reduction of the punitive damages.

**{52}** Allstate argues that Guest's lost income as a result of Guest closing her law practice was not within the contemplation of the parties as a measure of damages arising from the breach of the contract to defend and indemnify and that the damage award was speculative. Specifically, Allstate contends that because of the nature of their relationship—an at-will, attorney-client relationship—the parties did not contemplate loss of future earnings because Allstate had the right to terminate Guest's representation at any time and proof of future earnings was purely speculative because there was no obligation that the attorney-client relationship continue.

**{53}** The contract that was breached was the contract by Allstate to defend and indemnify Guest. On the other hand, irrespective of the contract, the client relationship between Allstate and Guest was terminable at will. "Under contract principles, an injured party is entitled to all damages that flow as a natural and probable consequence from a breach," *Exum v. Ferguson*, 97 N.M. 122, 123, 637 P.2d 553, 554 (1981), and for "such consequential damages as were within the contemplation of both parties at the time of contracting." *Camino Real Mobile Home Park P'ship v. Wolfe*, 119 N.M. 436, 446, 891 P.2d 1190, 1200 (1995) (internal quotations marks omitted) (citing 3 Dan B. Dobbs, *Dobbs Law of Remedies* § 12.4(6), at 91 (2d ed. 1993) ("[T]he scope of liability is limited to the risks or types of losses which the parties meant his performance to protect against.")). The contemplation of damages rule "anticipates an explicit or tacit agreement by the defendant 'to respond in damages for the particular damages understood to be likely in the event of a (sic) breach.'" *Id.* (quoting *Wall v. Pate*, 104 N.M. 1, 2, 715 P.2d 449, 450 (1986)). "Generally, damages must be proven with reasonable certainty." *Smith & Marrs, Inc. v. Osborn*, 2008-NMCA-043, ¶ 23, 143 N.M. 684, 180 P.3d 1183. "Damages which are speculative, conjectural, or remote are not to be considered for compensation." *Komis*, 114 N.M. at 662, 845 P.2d at 756 (internal quotation marks and citation omitted).

**{54}** Allstate argues, based on *Santa Fe Custom Shutters & Doors, Inc. v. Home Depot U.S.A., Inc.*, 2005-NMCA-051, 137 N.M. 524, 113 P.3d 347, that where a contract is at-will, future profits are not within the contemplation of the parties. In *Santa Fe Custom Shutters & Doors, Inc.*, a local manufacturer entered into an oral agreement of an undefined duration with Home Depot that was terminable at will. *Id.* ¶¶ 3-4. When Home Depot suddenly terminated the business relationship, the manufacturer sued and was awarded compensatory damages based on its anticipated sales over a five-year period subsequent to Home Depot's termination of the agreement. *Id.* ¶¶ 6-7. On appeal, we agreed with Home Depot's argument that "[t]he essence

of the at-will doctrine is the right of either party to cease doing business without liability for *future* profits the other party hopes it will earn if the relationship continues." *Id.* ¶ 43 (alteration in original) (internal quotation marks omitted).

{55}     Guest attempts to distinguish *Santa Fe Custom Shutters & Doors, Inc.* on the basis that there was no breach of contract in that case, while here, Allstate breached its contract with Guest to provide a defense and indemnification. While we accept this distinction, it does not undermine the applicability of the general principle noted above. A number of other jurisdictions have likewise held that future profits are not available where a business relationship is terminable at will. *See, e.g., All Line, Inc. v. Rabar Corp.*, 919 F.2d 475, 480 (7th Cir. 1990) ("The remedy for a breach of a terminable-at-will contract is pre-termination lost profits only."); *Kinsey v. Cendant Corp.*, 521 F. Supp. 2d 292, 308 (S.D.N.Y. 2007) ("Damages for anticipated lost salary are inappropriate where employment is at will. Even if [the plaintiff] had accepted the brokerage position, he could have been terminated the next day. [Thus,] he cannot establish he would have received the salary he contends he forfeited in reliance on [the defendant's] promises." (alterations in original) (internal quotation marks and citation omitted)); *Dalton Props., Inc. v. Jones*, 683 P.2d 30, 31 (Nev. 1984) ("Where a contract provides that either party may terminate the agreement at will, the party so terminated may not recover damages for those profits that he purportedly could have gained over the maximum life of the contract."); *Sports & Travel Mktg., Inc. v. Chicago Cutlery Co.*, 811 F. Supp. 1372, 1378 (D. Minn. 1993) ("[A] party is generally not entitled to lost future profits arising from a contract that is terminable at will.").

{56}     We hold that, based on the specific circumstances presented by this case, future wages or earnings that might have arisen from the relationship that was terminable at will are not recoverable. Moreover, such damages are too speculative to permit recovery. *See Bakotich v. Swanson*, 957 P.2d 275, 278-79 (Wash. Ct. App. 1998) (noting that in the employment context, "an at-will employment contract anticipates that the employer may repudiate at any time without ramification," and that, as a result, "any lost wages or benefits [are] highly speculative and properly excluded by the trial court"). Guest concedes that her relationship with Allstate could be terminated at any time. As a result, we conclude that Guest was unable to prove future earnings with any reasonable degree of certainty. *See Lovington Cattle Feeders, Inc. v. Abbott Labs.*, 97 N.M. 564, 568, 642 P.2d 167, 171 (1982) (stating that "damages, to be recoverable, must be proven with reasonable certainty and not be based upon speculation"); *see also Kinsey*, 521 F. Supp. 2d at 308 (holding that where the employment contract was at will, "there simply can be no certainty" regarding whether the plaintiff would have remained employed long enough for the benefit the plaintiff claims he lost to have accrued).

{57}     To the extent that Guest asserts that the inducement for the defense and indemnification contract was to avoid a conflict of interest so she could continue working for Allstate, there is nothing about Guest's *ability* to continue working for Allstate, which established Guest was *entitled* to continue representing Allstate, thus altering the nature of the at-will relationship. There was, therefore, insufficient evidence for a reasonable jury to conclude that lost profits were within the contemplation of both parties at the time the contract to defend and indemnify

18

was formed. *See Landavazo*, 111 N.M. at 138, 802 P.2d at 1284 ("Substantial evidence is such relevant evidence that a reasonable mind would find adequate to support a conclusion.").

**{58}** Finally, Guest argues that, although her relationship with Allstate was terminable at will, "[i]t does not follow . . . that she has no recoverable damages as a result of its breach of its contract to defend and indemnify her." We agree. While we hold that Guest is not entitled to lost profits due to her inability to continue representing Allstate, Guest presented substantial evidence that recovery for the cost of defense and any judgment against her was within the contemplation of the parties at the time of contracting. However, it is unclear from the record what portion of the jury's award was based on Guest's testimony regarding her lost profits and what portion was based on Guest's attorney fees and costs in defending against the Durhams' claims. For this reason, we remand this matter to the trial court for a new trial on those damages to which Guest is entitled. Furthermore, since punitive damages "must be reasonably related to the injury and to any damages given as compensation," UJI 13-1827 NMRA, we also remand the punitive damage award to be retried.

## VII. ATTORNEY FEES

**{59}** Finally, we turn to the issue of attorney fees. Guest claims that the trial court erred by: (1) refusing to allow her to present evidence to the jury of her attorney fees and expenses incurred in the present case as an item of damages, and (2) refusing to grant her attorney fees pursuant to her post-trial motion. Guest's argument in support of attorney fees is premised on her assertion that her contract with Allstate was a contract of insurance. We conclude that Guest's contract with Allstate is not a contract of insurance and that the trial court did not abuse its discretion in denying Guest's requests for attorney fees. *See G & G Servs., Inc.*, 2000-NMCA-003, ¶ 51 ("We review the grant or denial of attorney fees for an abuse of discretion.").

**{60}** Guest asks this Court to view her contract with Allstate as a contract of insurance and to extend to her the rights and protections that are afforded to insureds. *See Dellaira v. Farmers Ins. Exch.*, 2004-NMCA-132, ¶ 11, 136 N.M. 552, 102 P.3d 111 (stating that "[t]he relationship between insurer and insured is a special relationship under New Mexico law"); NMSA 1978, § 39-2-1 (1977); NMSA 1978, § 59A-16-30 (1990). Although we acknowledge that an insurance contract is a contract of indemnification, not all indemnification contracts are insurance contracts. *See* 1 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* § 1:7, at 1-13 (3d. ed. 2005) ("While a policy of insurance . . . is basically a contract of indemnity, not all contracts of indemnity are insurance contracts; rather, an insurance contract is one type of indemnity contract." (footnote omitted)). The mere fact that the contract was a contract for indemnification written by an insurance company is insufficient to make it an insurance contract. Instead, whether Guest's contract with Allstate was an insurance contract depends not on "the character of the company writing it, the nomenclature used, or the manner or mode of affording insurance, but [on] the nature of the contract." 1 Russ & Segalla, *supra*, § 1:8, at 1-14.

**{61}** The primary difference between an ordinary contract and an insurance contract is risk distribution. *See* 1 Eric Mills Holmes & Mark S. Rhodes, *Appleman on Insurance* § 1.3, at 10-

19

11 (2d ed. 1996) ("An insurance contract differs from the ordinary contract because of risk distribution."); 1 Holmes & Rhodes, *supra*, § 1.3, at 10 ("Risk sharing is the linchpin of insurance and its accompanying body of law."); *see also Group Life & Health Ins. Co. v. Royal Drug Co.*, 440 U.S. 205, 211 (1979) ("The primary elements of an insurance contract are the spreading and underwriting of a policyholder's risk."), *quoted with approval in N.M. Life Ins. Guar. Ass'n v. Moore*, 93 N.M. 47, 50, 596 P.2d 260, 263 (1979). While it is apparent that the risk of the Durham litigation was shifted from Guest to Allstate under the terms of the contract, Allstate points out, and Guest does not dispute, that the contract does not involve distribution, or sharing, of the risk among others. *See* 1 Holmes & Rhodes, *supra*, § 1.3, at 10 (noting that "[r]isk sharing connotes not only a transfer of risk (risk-shifting) to others but a distribution (sharing) of the risk among the others"); Robert E. Keeton & Alan I. Widiss, *Insurance Law* § 1.3, at 13-14 (1988) (observing that not all methods of spreading risk require insurance). Without the element of risk distribution, Guest's contract with Allstate is no more than a private indemnity agreement. *See Lawyers Title Ins. Corp. v. New Freedom Mortgage Corp.*, 655 S.E.2d 269, 275 (Ga. Ct. App. 2007) (holding that a closing protection letter offering to indemnify a mortgage company was not an insurance contract where, although issued by an insurance company, there was no distribution of the risk).

**{62}** To the extent Guest argues her contract falls within the purview of the Insurance Code, *see* NMSA 1978, §§ 59A-1-1 to 59A-59-4 (1993, as amended through 2007), we disagree. Although Guest's indemnification contract with Allstate may fit within the broad definition of "insurance" provided in Section 59A-1-5, Guest's contract with Allstate is not the type of transaction we believe the Legislature intended to address in enacting the Insurance Code. New Mexico appellate courts have acknowledged that the reasons a special and unique relationship between an insurer and an insured is recognized is due to "the inherent lack of balance in and adhesive nature of the relationship, as well as the quasi-public nature of insurance and the potential for the insurer to unscrupulously exert its unequal bargaining power at a time when the insured is particularly vulnerable." *See Dellaira*, 2004-NMCA-132, ¶ 14 (internal quotation marks and citations omitted); *Bourgeous v. Horizon Healthcare Corp.*, 117 N.M. 434, 439, 872 P.2d 852, 857 (1994) (discussing the inherent imbalance in relationships between insurers and insureds and the superior bargaining position of insurers). The Insurance Code is based on many of the same concerns. *See, e.g.,* § 59A-16-20.

**{63}** Here, there was no inherent imbalance in the bargaining power of the parties. Instead, Guest, an attorney, testified that she spoke with Allstate representatives and Allstate attorneys in an effort to negotiate the contract. Of equal importance, as is clear from the testimony presented at trial, Guest was not compelled to enter into a contract of adhesion. To the contrary, both parties freely negotiated the terms of the contract as they saw fit. *See Albuquerque Tire Co. v. Mountain States Tel. & Tel. Co.*, 102 N.M. 445, 448, 697 P.2d 128, 131 (1985) (defining a contract of adhesion as "a standardized contract prepared entirely by one party to the transaction for the acceptance of the other," where "due to the disparity in bargaining power between the draftsman and the second party, [the contract] must be accepted or rejected by the second party on a 'take it or leave it' basis, without opportunity for bargaining and under such conditions that the 'adherer' cannot obtain the desired product or service save by acquiescing in the form

agreement" (emphasis, alteration, internal quotation marks, and citation omitted)). We therefore conclude that the nature of the transaction in this case does not warrant application of the protections arising from an insurer-insured relationship.

**{64}** Guest argues based on *Lieber v. ITT Hartford Insurance Center, Inc.*, 15 P.3d 1030 (Utah 2000), that she should have been permitted to present evidence of the attorney fees she incurred in the prosecution of this case against Allstate as an item of damages. However, *Lieber* is premised on the existence of an insurance contract, *see id.* at 1032-33, and, thus, does not apply in the context before us. Moreover, attorney fees incurred in the enforcement of a right to indemnification are not a natural and probable consequence of the breach. *See First Nat'l Bank of Clovis v. Diane, Inc.*, 102 N.M. 548, 555, 698 P.2d 5, 12 (Ct. App. 1985) (holding that the defendant was only permitted to recover attorney fees as an item of special damages with respect to the underlying action in which the defendant was sued and was not permitted to recover attorney fees incurred in the malpractice portion of the case as damages).

**{65}** Finally, Guest has not identified any statutory or contractual provision, not premised on the existence of an insurance contract, that permits her to recover attorney fees. *See N.M. Right to Choose/NARAL v. Johnson*, 1999-NMSC-028, ¶ 9, 127 N.M. 654, 986 P.2d 450 (stating that New Mexico adheres to the American rule that, absent statute, court rule, or contractual agreement, litigants are responsible for their own attorney fees). We find no error in the trial court refusal to permit Guest to present evidence of her attorney fees incurred in the prosecution of this case or the trial court refusal to award attorney fees based on Guest's post-trial motion.

**CONCLUSION**

**{66}** We affirm the jury verdict with respect to liability, reverse the award of compensatory and punitive damages, and remand for a new trial on compensatory and punitive damages consistent with this Court's opinion. We further affirm the trial court refusal to award Guest attorney fees.

**{67}**   **IT IS SO ORDERED.**

**MICHAEL E. VIGIL, Judge**

**WE CONCUR:**

**JAMES J. WECHSLER, Judge**

**RODERICK T. KENNEDY, Judge**

**Topic Index for *Guest v. Allstate Insurance Co.*, No. 27,253**

| | |
|---|---|
| **AE** | **APPEAL AND ERROR** |
| AE-PA | Preservation of Issues for Appeal |
| | |
| **AT** | **ATTORNEYS** |
| AT-CI | Conflict of Interest |
| AT-FG | Fees, General |
| AT-LM | Legal Malpractice |
| AT-PR | Professional Responsibility |
| | |
| **CN** | **CONTRACTS** |
| CN-BR | Breach |
| CN-CS | Consideration |
| CN-GF | Covenant of Good Faith and Fair Dealing |
| | |
| **EV** | **EVIDENCE** |
| EV-AE | Admissibility of Evidence |
| EV-PB | Probative Value vs. Prejudicial Effect |
| | |
| **IN** | **INSURANCE** |
| IN-AF | Attorney Fees |
| IN-DD | Duty to Defend |
| IN-IY | Indemnity |
| | |
| **TR** | **TORTS** |
| TR-MG | Malpractice, General |
| TR-PF | Prima Facie Tort |
| | |
| **RE** | **REMEDIES** |
| RE-CD | Compensatory Damages |
| RE-FD | Future Damages |
| RE-ID | Indemnification |
| RE-LF | Lost Profits |
| RE-PU | Punitive Damages |