This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**ESTATE OF DANIEL RALPH GUTIERREZ, by and through his personal representative, JANET JARAMILLO, individually, and as Next Friend of SAGE GUTIERREZ, JORDAN GUTIERREZ, and NOAH GUTIERREZ, Minors,**

Plaintiffs-Appellees,

v. NO. 28,799

**METEOR MONUMENT, LLC d/b/a ALAMEDA METEOR and METEOR STORES, INC.,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Timothy L. Garcia, District Judge**

Vigil Law Firm, P.A.
Jacob G. Vigil
Albuquerque, NM

for Appellees

Domenici Law Firm, P.C.
Pete V. Domenici, Jr.
Lorraine Hollingsworth
Albuquerque, NM

for Appellant

**MEMORANDUM OPINION**

**WECHSLER, Judge.**

Defendant Meteor Monument, LLC appeals the district court's denial of its motion for directed verdict, renewed motion for directed verdict, motions for judgment as a matter of law, and motion for a new trial. Defendant argues, as it did at every stage, that no reasonable jury could find that Dean Durand (Durand) was acting within the scope of his employment with Conoco Convenience Store (Conoco), owned by Defendant, at the time of the accident at issue in this case and that, therefore, no reasonable jury could find against Defendant on a vicarious liability claim. Defendant also claims that a negligent hiring claim was inappropriately presented to the jury because of the focus of the trial on scope of employment. Defendant further argues that no reasonable jury could find against Defendant on the liquor license liability claim because there was no evidence that any employee of Defendant knew that Durand was intoxicated when it sold or served him alcohol on the day of the accident. Defendant finally argues that the punitive damages cannot stand because there was no established legal theory upon which they can be imposed, and, at the very least, they are excessive and violate due process concerns.

At oral argument before this Court, Plaintiffs asserted that the case was a negligent hiring case from beginning to end. However, direct liability and vicarious liability were confused at trial, it was not clear which claim was being tried, and at the end of the trial, it was not clear which claim was actually presented to the jury. Therefore, we reverse and remand to the district court for a new trial on the negligent hiring claim. Additionally, we agree with Defendant that no reasonable jury could have found against Defendant on the liquor license liability claim, and we therefore reverse that claim. Because we reverse and remand on the employment liability claim, we do not reach the questions pertaining to punitive damages.

**BACKGROUND**

In August 2003, Kawaljit (Nena) Brackeen, the manager of Conoco in Albuquerque, New Mexico, hired Durand on a temporary basis, paying him cash from the register, to help with cleaning the parking lot until Brackeen was able to find someone else that she could formally employ. Durand's duties were limited to Conoco's parking lot, including cleaning in the lot and on the exterior premises of Conoco, but not including use of his personal vehicle, a Ford Bronco. Durand had a history of drinking alcoholic beverages while on Conoco premises, of which Brackeen was aware. On August 31, 2003, Durand was at Conoco for much of the day, cleaning his personal truck and doing "prep work" in anticipation of work the next morning.

Durand drank seven 12-ounce cans of beer while on Defendant's property and bought two 24-ounce cans of "high octane" beer at the Conoco store after lunch. Later that evening, around 6:00 p.m., after having consumed one of the "high octane" beers, Durand exchanged the other for a cold one.

Around 7:00 p.m. that evening, Durand left Defendant's property in his Bronco with another individual to give that person a ride home. The individual regularly spent time at Conoco and was known to regularly purchase alcohol there as well. Durand testified that, in taking the individual home, he was not "doing any service or providing any benefit to [Conoco]." Upon dropping off the individual, the individual asked Durand if he would "like to do about a 15-unit shot" of heroin. Durand agreed and stated that, initially, he felt "normal" and "fine" after injecting the heroin. Durand then informed the individual that he needed to return to Conoco to finish doing his prep work and cleaning the islands. Also, at some point before returning to Conoco, Durand smoked crack cocaine.

On Durand's way back to Conoco, he passed out numerous times while driving and struck five vehicles, including a motorcycle driven by Daniel Ralph Gutierrez (Gutierrez). Gutierrez died as a result of the accident. A police officer on the scene of the accident testified that Durand's vehicle emitted a strong odor of alcohol and that Durand smelled of alcohol, had watery, slightly bloodshot eyes, and exhibited other

signs of being intoxicated. Durand was convicted of vehicular homicide, three counts of great bodily injury due to driving while intoxicated or under the influence of illegal drugs, and abuse of a child and was sentenced to eighteen years of prison, with an actual term of ten years.

Plaintiffs, the estate of Gutierrez through its personal representative, Gutierrez' mother Janet Jaramillo, individually and as next friend to Gutierrez' three children, filed suit against Durand and Defendant for wrongful death and damages arising out of the accident. A jury trial was held. At the close of Plaintiffs' case, Defendant moved for directed verdict, arguing that Plaintiffs failed to present sufficient evidence to present the employment liability claim and the liquor license liability claim for both compensatory and punitive damages to the jury. The district court denied the motion as to compensatory damages for all claims and granted it as to punitive damages on the liquor license claim. After the trial, but before the jury deliberated, Defendant renewed its motion for directed verdict on both claims, arguing that as a matter of law, no reasonable jury could find that Durand was within the scope of his employment at the time of the accident and that Plaintiffs' claim that Defendant was responsible for Durand's actions as an employee could not be raised because it had not been raised before trial. The district court denied Defendant's motion. The district court found, however, that Durand's use of crack cocaine and heroin was outside the scope of his

5

employment. The jury received instructions regarding liquor license liability and employment liability.

The jury entered its verdict against Defendant on claims of employer liability and liquor license liability. The jury's award was for $4,550,000 in compensatory damages, finding Durand 40% liable and Defendant 60% liable. The jury also awarded punitive damages for $10,000,000 against Defendant and $10,000 against Durand. Notwithstanding the jury verdict, Defendant moved post-trial for judgment as a matter of law and for a new trial, arguing that the negligent hiring of Durand claim was not adequately presented to the jury and that, regardless, the evidence was insufficient under both claims. The district court denied the motions, finding that Defendant permitted Durand to purchase the beer and then leave the property, which was "within the course and scope" of Durand's employment, thus allowing a reasonable jury to find vicarious liability and negligent hiring.

Defendant then argued that the compensatory damages and punitive damages should be remitted, that the punitive damages could not stand because there was no vicarious liability, that the punitive damages were excessive, that there was no evidence supporting the liquor license liability claim or the employer liability claim, and that it should be granted a new trial asserting essentially the same arguments as asserted in support of its motion for judgment as a matter of law. The court denied

Defendant's requests. Defendant appeals the district court's denial of its motion for directed verdict and post-trial motions.

**EMPLOYER LIABILITY CLAIMS**

Defendant states that throughout the case, "the negligent hiring claim became a vicarious liability claim" and that "[a]lthough the Special Verdict form . . . states that [Defendant] was negligent for hiring, retention and supervision of Durand, . . . the jury instructions and the jury questions made it clear that the claim was submitted to the jury on the basis of vicarious liability." Defendant therefore asserts that the district court erred in denying its motion for directed verdict and motion for judgment as a matter of law. We review a district court's rulings on motions for directed verdict and post-trial motions for judgment as a matter of law de novo. *See Guest v. Allstate Ins. Co.*, 2009-NMCA-037, ¶ 10, 145 N.M. 797, 205 P.3d 844 (directed verdict), *certs. granted*, 2009-NMCERT-004, 146 N.M. 642, 213 P.3d 792; *Niederstadt v. Town of Carrizozo*, 2008-NMCA-053, ¶ 9, 143 N.M. 786, 182 P.3d 769 (judgment as a matter of law), *cert. denied*, 2008-NMCERT-003, 143 N.M. 681, 180 P.3d 1180.

At oral argument before this Court, Plaintiffs asserted that there was never a vicarious liability claim and that, instead, it was a claim for negligent hiring from the beginning of the case through the end. Plaintiffs also argue in their brief that the jury found Defendant liable under a negligent hiring claim and also on a vicarious liability

claim. However, at the post-trial hearing and at oral argument before this Court, Plaintiffs clearly and repeatedly stated that there was no employer vicarious liability claim, and the special verdict form does not ask the jury to consider whether Defendant was liable under an employer vicarious liability theory. Plaintiffs also stated at oral argument that they were aware that they could not win on a vicarious liability claim because, as they conceded, there was no evidence to support a finding that Durand was acting in the scope of his employment with Defendant at the time of the accident. We agree with Plaintiffs that employer vicarious liability was not argued. We also agree with Defendant that a claim for the negligent hiring, supervision, and retention of Durand was not included in the complaint or clearly argued at trial. However, because of the pervasive confusion throughout the trial by the parties and the district court, we remand for a new trial on the negligent hiring claim.

An employer may be vicariously liable for the tortious conduct of employees who are acting within the scope of employment at the time the tortious conduct was committed. *See Ovecka v. Burlington N. Santa Fe Ry. Co.*, 2008-NMCA-140, ¶ 9, 145 N.M. 113, 194 P.3d 728, *cert. quashed*, 2009-NMCERT-005, 146 N.M. 728, 214 P.3d 793. Therefore, to impose employer vicarious liability on Defendant, Plaintiffs would have needed to establish that Durand was acting within the scope of his employment

with Defendant at the time of Durand's tortious conduct—in other words, at the time Durand caused the accident.

As we have stated, Plaintiffs assert that there was no employer vicarious liability claim in this case. Moreover, the district court specifically stated that the scope of employment "doesn't mean when [Durand] is driving." The district court was clear that the evidence did not support that Durand was providing Defendant any benefit when he left the premises, stating that "[t]he facts, clearly, don't support that [Durand] was out on the public roads, that he was supposedly going somewhere and bringing somebody back"—in other words, the facts did not support that Durand was acting in the course and scope of his employment at the time of the accident. We agree and, because a finding that Durand was acting in the scope of his employment at the time of the accident was required for employer vicarious liability, *see id.*, we hold that there was no employer vicarious liability claim.

As to the negligent hiring, retention, and supervision of Durand claim, an employer may be directly liable for an employee "based on the employer's negligent acts or omissions in hiring or retaining an employee when the employer knows or should know, through the exercise of reasonable care, that the employee is incompetent or unfit." *Lessard v. Coronado Paint & Decorating Ctr., Inc.*, 2007-NMCA-122, ¶ 28, 142 N.M. 583, 168 P.3d 155, *cert. quashed*, 2008-NMCERT-002,

9

143 N.M. 667, 180 P.3d 674. Even if the employer is not vicariously liable, the employer may still be held liable for negligent hiring or retention. *Id.* To succeed on a negligent hiring claim, a plaintiff must show that there was "a breach of a recognized duty to a foreseeable plaintiff." *Ovecka*, 2008-NMCA-140, ¶ 26. A duty to third parties for negligent hiring derives from foreseeability of a particular plaintiff and a particular harm and, if that foreseeability exists, a determination of public policy to ascertain whether imposing the duty would be supported by law. *Id.* In this case, therefore, Plaintiffs needed to prove that Plaintiffs' injury, arising from the accident that Durand caused, was a foreseeable result of Defendant hiring, retaining, or supervising Durand.

As stated above, Defendant argues that a claim for Defendant's negligent hiring of Durand was not included in the complaint, was not tried, and should not have been presented to the jury. Defendant first made this argument to the district court during the jury instruction phase of the trial. Defendant argued that the complaint alleged that Defendant negligently hired employees who sold alcohol to Durand, but that it did not allege that Defendant negligently hired Durand himself. Defendant stated that, as a result, Defendant had no notice that there was a negligent hiring of Durand claim against it and that Plaintiffs' including an instruction regarding Defendant's negligent hiring of Durand was the first time Defendant was aware that such a claim was being

brought. Defendant thus argued that a negligent hiring of Durand claim should not have been permitted and that the district court erred in concluding that Durand could be included as an "other employee[]" as argued in the complaint. Although Defendant did not object that the elements instruction for the negligent hiring claim was wrong, we are satisfied that Defendant's objection to the direct negligence theory at the beginning of the instruction phase was sufficient to inform the district court and the other parties that Defendant believed that the elements of negligent hiring had not been presented throughout the trial. *See* Rule 12-216(A) NMRA ("To preserve a question for review it must appear that a ruling or decision by the district court was fairly invoked."); *Reule Sun Corp. v. Valles*, 2010-NMSC-004, ¶ 9, 147 N.M. 512, 226 P.3d 611 (filed 2009).

We agree with Defendant that a claim for the negligent hiring of Durand was not included in the complaint. Indeed, the complaint asserts that Defendant "negligently hired, trained, supervised, and retained . . . Brackeen, John Brackeen and other employees and agents *who sold or otherwise provided alcoholic beverages to . . . Durand*." (Emphasis added.) Durand could not have been included as one of the "other employees" mentioned because he was not hired to sell alcohol, he did not sell alcohol, and no claim has been made that he sold or served alcohol to himself.

Nevertheless, although it was not clear throughout the trial that Plaintiffs were

seeking recovery for Defendant's negligent hiring of Durand, it was also not clear that Plaintiffs were not. Several times throughout the trial, Plaintiffs and the district court discussed evidence and objections within the context of the negligent hiring and supervision of Durand. For example, the court referenced negligent supervision of Durand in response to Plaintiffs' argument regarding utter indifference; it mentioned negligent supervision again in response to Defendant's request to dismiss punitive damages under "some type of . . . employee [theory]"; and it discussed Defendant "letting an employee get drunk and work and drive" in the context of punitive damages for employment liability, implying negligent supervision. Although no evidence was presented that Durand was hired to drive or that he was acting for the benefit of Defendant when he drove the individual home, *see Ovecka*, 2008-NMCA-140, ¶¶ 27-29, a claim for the negligent hiring of Durand was clearly contemplated by Plaintiffs and the court throughout the course of the trial. Additionally, the special verdict form, which was not objected to by Defendant, asked the jury to consider whether Defendant was "negligent for the hiring, retention, or supervision of . . . Durand" and whether "any negligence" of Defendant was a cause of Plaintiffs' injuries. As Defendant asserts in its brief, "[j]ury instructions not objected to become the law of the case." *McMinn v. MBF Operating Acquisition Corp.*, 2007-NMSC-040, ¶ 53, 142 N.M. 160, 164 P.3d 41 (internal quotation marks and citation omitted).

12

In addition to any confusion regarding who Defendant negligently hired, both parties focused their arguments throughout the trial on "scope of employment." As stated above, although scope of employment is required for a finding of vicarious liability, *see Ovecka*, 2008-NMCA-140, ¶ 9, it is merely a factor that the factfinder could consider when determining foreseeability in a direct liability action. *See Lessard*, 2007-NMCA-122, ¶ 40. Evidence that an employer has negligently hired an unsafe driver combined with that employer benefitting from the employee's driving—the driving being within the scope of employment—could allow a factfinder to conclude that the employer's negligence in hiring caused the injury to the third party. *Id.* ¶ 39. However, the district court specifically found that the "occurrence" relevant to the scope of employment inquiry was Defendant's allowing Durand to drink and then leave the premises, not Durand's driving at the time of the accident.

The fact that Defendant arguably knew of Durand's history with alcohol abuse and driving while under the influence when selling him alcohol and allowing him to drive might be a factor that contributed to a finding of liquor license liability—although, as discussed fully below, all three elements required for such a finding were not met. Unfortunately, however, that fact is not relevant to the employment liability question in this case. If Durand had been hired in some capacity to drive or had been found to be acting in the scope of his employment while he was

driving the individual home or at the time of the accident, Defendant's knowledge of Durand's history with alcohol abuse and driving while under the influence might have played a role with a negligent hiring claim. *See Ovecka*, 2008-NMCA-140, ¶ 25. However, in this case, as stated above, the district court specifically stated that the scope of employment "doesn't mean when [Durand] is driving."

The district court indicated at the post-trial hearing that if Defendant was correct that scope of employment was not necessary for a negligent hiring claim, then the instructions were faulty. However, the court ultimately found that the faulty instruction was not fundamental error. We disagree.

The parties' and the district court's focus on "scope of employment"; Plaintiffs' failure to clearly argue the foreseeability of the accident as a result of Defendant's hiring of Durand, as required for a finding of direct negligence; the faulty instructions; and the jury's question and court's answer, stating that scope of employment was required to find Defendant liable under the employment liability claim, created an environment in which the jury would have been unable to fairly determine the actual issues before it. *Cf. State v. Stefani*, 2006-NMCA-073, ¶ 22, 139 N.M. 719, 137 P.3d 659 (stating that we review jury instructions to determine whether they would have been confusing or whether they may have misdirected a reasonable jury). Given the parties' and the district court's focus on "scope of employment," as well as the jury's

14

clear finding that Durand was acting in the scope of his employment, we cannot know if the jury might have found against Defendant on the negligent hiring of Durand claim had it been accurately presented.

Defendant requests that this Court overturn the damages awards against Defendant or, in the alternative, remand to the district court for a new trial. Because there is too much uncertainty as to whether the jury would have reasonably found against Defendant on a negligent hiring of Durand claim, we remand for a new trial. *Cf. State v. Stampley*, 1999-NMSC-027, ¶ 48, 127 N.M. 426, 982 P.2d 477 (reversing and remanding for a new trial in a case where the jury instructions were so vague that they could have confused or misdirected a reasonable jury to such an extent that our Supreme Court could not know if the defendant was convicted of a nonexistent crime).

**LIQUOR LICENSE LIABILITY**

Defendant additionally argues that the district court erred in denying its motion for directed verdict, thereby submitting the liquor license liability claim to the jury, because the evidence was insufficient to support the claim. We review the district court's denial of a motion for a directed verdict de novo. *Guest*, 2009-NMCA-037, ¶ 10. To find Defendant liable under the liquor license liability claim, Plaintiffs needed to show that (1) Defendant or its agents or employees sold or served alcohol

to Durand while he was intoxicated and that (2) Defendant or its agents or employees knew from circumstances and from what was reasonably apparent that Durand was intoxicated. *See* NMSA 1978, § 41-11-1(A) (1986) (stating that a licensee can be held civilly liable, predicated on a breach of NMSA 1978, Section 60-7A-16 (1993), if it (1) sold or served alcohol to an intoxicated person, (2) it was reasonably apparent to the licensee that the person was intoxicated, and (3) the licensee knew from circumstances that the person was intoxicated).

As discussed above, the record establishes that Durand was permitted to regularly purchase and drink alcohol at the store; that he was often intoxicated in the afternoons and was told by employees of Defendant to drive his vehicle off the premises; that on August 31, Durand drank seven 12-ounce cans of beer and at least one 24-ounce can of "high octane" beer during the day; and that around 6:00 p.m. on August 31, Durand exchanged his remaining can of "high octane" beer for a cold one. The record further shows that approximately five hours after the accident, Durand had a blood alcohol level of .09. Initially, therefore, it would appear that a reasonable jury could conclude that (1) Defendant's employees sold alcohol to Durand and allowed him to exchange a beer while he was intoxicated and (2) Defendant's employees knew from the circumstances and Durand's history, as well as from what was reasonably apparent, that Durand was intoxicated when Defendant's employees sold him the beer

and allowed him to exchange cans. *See id.*; *see also Carter Farms Co. v. Hoffman-Laroche, Inc.*, 83 N.M. 383, 385, 492 P.2d 1000, 1002 (Ct. App. 1971) (stating that a fact may be proved by circumstantial evidence). Indeed, Plaintiffs argue that the evidence could allow a reasonable jury to infer, even if from circumstantial evidence, that Durand was drunk when Defendant allowed Durand to exchange—in other words, when Defendant "sold" Durand—the "high octane" beer.

However, although we agree that the evidence could allow a reasonable jury to infer that Durand was drunk at the time he purchased the alcohol and perhaps even that Defendant knew that Durand was drunk based on the circumstances and Durand's history, there is no evidence in the record regarding who sold the alcohol to Durand and, therefore, no evidence to support a finding that Defendant knew that Durand was drunk based on what was reasonably apparent. *See* § 41-11-1(A). Durand could not remember who sold him the alcohol and the manager could not remember who was employed at the store that day. The store also has a high turnover, and the employees who were probably working that afternoon worked at Conoco for likely no more than a month and may not have had knowledge of Durand's reputation for drinking. Additionally, Durand only worked for the store for two weekends before the incident, and, although the manager of the store knew his reputation for drinking, there is no evidence that short-term employees would have had the requisite knowledge of the

17

drinking habits of another short-term employee. As a result, despite the evidence that Durand had been drinking that day and often did drink while on Conoco premises, there is no evidence that it would have been reasonably apparent to anyone selling Durand the alcohol, or allowing him to exchange his "high octane" beer, in the evening on August 31 that Durand was intoxicated. Indeed, Durand was the only person testifying at trial who could address whether or not he was intoxicated at the time the liquor was purchased or exchanged, and he testified that he "wasn't drunk"; that, in general, he "was not intoxicated . . . any time while [he] worked"; that he was not intoxicated during the time that he was at Conoco on August 31 before the accident; and that the reason he had trouble operating his vehicle was not because of the beer, but because of the heroin that he had injected. In addition, Durand testified that the amount of beer he had consumed that day was not a lot for him and that, although he had been drinking, the Conoco employees did not know he was drunk.

Generally, it is for the jury to weigh testimony, determine credibility, reconcile inconsistencies or contradictions, and determine where the truth lies. *Mascarenas v. Gonzales*, 83 N.M. 749, 751, 497 P.2d 751, 753 (Ct. App. 1972). However, in this case, no reasonable jury could find that an unknown employee who had likely been working at the store for a short amount of time knew of Durand's history, knew whether or how much Durand had been drinking that day, or could see that he was

18

impaired due to alcohol given his contention that he was not. In other words, no reasonable jury could find that Defendant or its agents or employees knew from what was reasonably apparent that Durand was intoxicated. *See* § 41-11-1(A)(2). Therefore, we reverse the district court's denial of Defendant's motion for directed verdict on the liquor license liability claim.

**CONCLUSION**

For the reasons stated in this opinion, we reverse and remand the direct negligence claim to the district court for a new trial. Additionally, we reverse the district court's denial of Defendant's motion for a directed verdict on the liquor license liability claim. Because the employer liability claim is being remanded for a new trial, we do not reach Defendant's arguments regarding punitive damages.

**IT IS SO ORDERED.**

_____

**JAMES J. WECHSLER, Judge**

**WE CONCUR:**

_____

**MICHAEL D. BUSTAMANTE, Judge**

_____

**CELIA FOY CASTILLO, Judge**